**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IN RE MARILYN S. SCHEER,
                    *Debtor*,

_____

MARILYN S. SCHEER,
                    *Appellant*,

v.

THE STATE BAR OF CALIFORNIA;
LUIS J. RODRIGUEZ, individually and
in his official capacity as President
of the Board of Trustees of the State
Bar of California; JOSEPH DUNN,
individually and in his official
capacity as Executive Director of the
State Bar of California; JOANN
REMKE, in her official capacity as
Presiding Judge of the State Bar of
California; KENNETH E. BACON,
individually and in his official
capacity as Presiding Arbitrator of
the State Bar of California,
                    *Appellees*.

No. 14-56622

D.C. No.
2:14-cv-04829-
JFW

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
February 11, 2016—Pasadena, California

Filed April 14, 2016

Before: Marsha S. Berzon and John B. Owens, Circuit
Judges and Algenon L. Marbley,[*] District Judge.

Opinion by Judge Owens

## SUMMARY[**]

### Bankruptcy

The panel reversed the district court's affirmance of the bankruptcy court's decision that a suspended attorney's debt was nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(7).

The state bar suspended the attorney for failure to pay a debt under an arbitration award concerning improperly collected client fees. She sought reinstatement of her law license under 11 U.S.C. § 525(a), which prohibits the government from revoking or refusing to renew a license "solely because" an individual has not paid a debt that is dischargeable in bankruptcy.

---

[*] The Honorable Algenon L. Marbley, District Judge for the U.S. District Court for the Southern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the debt did not fall within the scope of § 523(a)(7), which excepts from bankruptcy discharge a debt that "is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." The panel remanded the case to the district court.

## COUNSEL

Marilyn S. Scheer (argued), Woodland Hills, California, pro se Appellant.

Michael von Loewenfeldt (argued), Kerr & Wagstaffe LLP, San Francisco, California; Kevin W. Coleman and Todd B. Holvick, Schnader Harrison Segal & Lewis LLP, San Francisco, California, for Appellees.

## OPINION

OWENS, Circuit Judge:

Pro se appellant Marilyn Scheer, an attorney with a suspended California law license, contends that the district court erred when it held that her debt to a former client was nondischargeable under 11 U.S.C. § 523(a)(7). We agree with Scheer that this particular type of debt does not fall within the scope of section 523(a)(7), so we reverse the district court and remand for further proceedings.

## I.  BACKGROUND

### A.  The Client Dispute and State Bar Proceedings

In September 2010, a client named Clark retained Scheer to help modify his home mortgage loan, and paid her $5500 before any modification occurred. Clark then fired Scheer and sought return of the $5500 under California's mandatory attorney fee arbitration program. In August 2011, the arbitrator concluded that although Scheer performed competently, she violated California Civil Code Section 2944.7(a) by receiving advanced fees for residential mortgage modification services. Although the arbitrator believed that Scheer's violations were neither willful nor malicious, he concluded that California law required a full refund of the improperly collected fees and the arbitration filing fee of $275, for a total of $5775.

Scheer made a few payments against the arbitration award, but claimed a lack of funds and failed to pay the outstanding balance. At Clark's request, the Presiding Arbitrator brought an action against Scheer in state bar court

for failure to pay the award. In February 2013, the state bar court found that she could pay the award and had failed to propose a satisfactory payment plan, so it placed her on involuntary inactive enrollment status. This order suspended Scheer's right to practice law until (1) she paid back the remaining portion of Clark's funds, and (2) the court granted a motion to terminate her inactive enrollment. Scheer unsuccessfully sought relief from the State Bar Court Review Department and the California Supreme Court.

## B. Bankruptcy and District Court Proceedings

In July 2013, Scheer filed for Chapter 7 bankruptcy, naming both Clark and the State Bar as creditors. Although notified, neither the State Bar nor Clark objected to the debt being discharged.[1] Scheer then demanded reinstatement of her law license under 11 U.S.C. § 525(a), which prohibits the government from revoking or refusing to renew a license "solely because" an individual has not paid a debt that is dischargeable or was discharged in bankruptcy. After the State Bar ignored her demand, she filed suit in the Bankruptcy Court against the State Bar and certain bar officials (individually and in their official capacities), arguing that her suspension violated sections 525(a) and 362. The bankruptcy court (and later the district court) rejected that argument, reasoning that the debt was nondischargeable under section 523(a)(7). Scheer then appealed to our court.

---

[1] Unlike certain debts that fall under § 523(a)(2), (4), or (6), a creditor is not required to object in bankruptcy court to preserve the right to payment of a nondischargeable debt under § 523(a)(7). *See* § 523(c)(1); 4 *Collier on Bankruptcy* ¶¶ 523.02–03, 523.29 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

## II.  STANDARD OF REVIEW

We review de novo a district court's decision on an appeal from a bankruptcy court. *Barrientos v. Wells Fargo Bank, N.A*., 633 F.3d 1186, 1188 (9th Cir. 2011).  Because a fundamental policy of the Bankruptcy Code is to afford debtors a fresh start, "exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor." *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992).

## III.  ANALYSIS

Under the usual canons of statutory interpretation, this would be an easy case.  Section 523(a)(7) provides in relevant part that a debt is excepted from discharge in bankruptcy "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss."

On its face, section 523(a)(7) does not apply to Scheer's debt, as it is neither "a fine, penalty, or forfeiture" nor "payable to and for the benefit of a governmental unit." Rather, it is an arbitration award for a debt between two private parties, payable to one of them—the familiar chicken piccata of the bankruptcy petition buffet.  Ordinarily, that would be the end of the story.

Yet *Kelly v. Robinson*, 479 U.S. 36 (1986), complicates our inquiry.  The Supreme Court in *Kelly* addressed whether restitution obligations, imposed as conditions of probation in state criminal proceedings, were dischargeable.   While acknowledging that the "'starting point in every case involving construction of a statute is the language itself,'" the

Court then pivoted and reasoned that it must interpret the language of 523(a)(7) "in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems." *Id.* at 43–44 (quoting in part *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J., concurring)).

With the "deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings" in mind, the Court then addressed whether the state court criminal restitution was in fact nondischargeable under section 523(a)(7). *Id.* at 47. The Court reasoned that permitting discharge "would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems," and that it was unlikely that Congress "would limit the rehabilitative and deterrent options available to state criminal judges." *Id.* at 49. While restitution resembled a judgment "for the benefit of" the victim, the Court concluded that the overall role of restitution in "the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation," meant that the criminal restitution actually operated "for the benefit of" the state as far as section 523(a)(7) was concerned. *Id*. at 52–53. The Court concluded: "The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7)." *Id.* at 53.

The Court's approach in *Kelly*—to untether statutory interpretation from the statutory language—has gone the way of NutraSweet and other relics of the 1980s and led to

considerable confusion among federal courts and practitioners about section 523(a)(7)'s scope. For example, some courts have held that civil restitution payable to the government and then distributed to fraud victims is dischargeable. *See, e.g.*, *In re Towers*, 162 F.3d 952, 956 (7th Cir. 1998); *Hawaii v. Parsons (In re Parsons)*, 505 B.R. 540, 544 (Bankr. D. Haw. 2014), *recons. denied*, No. 09-02937, 2014 WL 1329541 (Bankr. D. Haw. Mar. 19, 2014). And some courts treat Rule 11 sanctions and a default judgment from a legal malpractice action payable to a private litigant the same way. *See Hughes v. Sanders*, 469 F.3d 475, 476–79 (6th Cir. 2006); *Wash v. Moebius (In re Wood)*, 167 B.R. 83, 88–89 (Bankr. W.D. Tex. 1994). But other courts hold that the costs of an attorney disciplinary proceeding, payable to the government, are nondischargeable, as are funds owed to the State Bar's Client Security Fund. *See Disciplinary Bd. of the Supreme Court of Pa. v. Feingold (In re Feingold)*, 730 F.3d 1268, 1274–76 (11th Cir. 2013); *State Bar of Cal. v. Findley (In re Findley)*, 593 F.3d 1048, 1054 (9th Cir. 2010); *Richmond v. N.H. Supreme Court Comm. on Prof'l Conduct*, 542 F.3d 913, 920 (1st Cir. 2008); *In re Phillips*, No. CV 09-2138 AHM, 2010 WL 4916633 at *5 (C.D. Cal. Dec. 1, 2010). And while *Kelly* holds that state criminal restitution is nondischargeable, a fellow appellate court holds that *federal* criminal restitution is dischargeable. *Rashid v. Powel (In re Rashid)*, 210 F.3d 201, 208 (3d Cir. 2000). It is fair to say that the "I know it when I see it approach" of *Kelly* has led to predictably unpredictable results.

To answer the question in this case, we look to *Findley*, our court's latest attempt to apply *Kelly* to debts incurred by an attorney. In *Findley*, the state bar court initiated disciplinary proceedings against Findley. 593 F.3d at 1049. In addition to a suspension and probationary period, the State

Bar assessed a $14,054 fee for the cost of those proceedings. *Id.* at 1049–50. Findley, like Scheer, refused to pay the award, which blocked his reinstatement. *Id.* at 1050. Findley, like Scheer, then declared bankruptcy and demanded reinstatement. *Id*. The State Bar then filed suit in bankruptcy court, arguing that the $14,054 fee was nondischargeable. *Id*.

We sided with the State Bar. While the parties in *Findley* agreed that the costs were "payable to and for the benefit of a governmental unit," they disagreed over whether they constituted a fine or penalty, or compensation for actual pecuniary loss. *Id*. We reviewed California law, which expressly provided that the costs were intended to "promote rehabilitation and to protect the public," rather than compensate someone, so they were nondischargeable under section 523(a)(7). *Id.* at 1052–54 (quoting Cal. Bus. & Prof. Code § 6086.10(e)).

When viewed through the *Findley* lens, our answer to the question before us is clear. For Scheer, there were no costs or fees assessed for disciplinary reasons.[2] Rather, the debt at issue was effectively the amount that Scheer improperly received from a client, but did not pay back. At its core, the $5775 is not a fine or penalty, but compensation for actual loss. Try as we might, we cannot stretch the language of section 523(a)(7) to cover the fee dispute at issue here, even

---

[2] While the underlying arbitration award includes reimbursement of the $275 arbitration filing fee paid by Clark in addition to the $5500 that he paid Scheer for legal services, this filing fee does not affect the question of whether the § 523(a)(7) exception applies to Scheer's debt. Scheer was suspended for the wrongful non-payment of the arbitration award, without inquiry as to why it was imposed or how it was calculated. *See generally* Cal. Bus. & Prof. Code § 6203(a) (providing that in a fee arbitration "the filing fee paid may be allocated between the parties by the arbitrators").

though we may disapprove of Scheer's conduct. The concerns permitting flexibility in *Kelly* are absent here. *See United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 244–45 (1989) (emphasizing how *Kelly*'s deviation from the statutory language "had been animated" by the unique concerns of state criminal proceedings and informed by related pre-Bankruptcy Code practices that "reflected policy considerations of great longevity and importance").

"States traditionally have exercised extensive control over the professional conduct of attorneys," *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982); *see also Findley*, 593 F.3d at 1053, and the State Bar contends that ruling in Scheer's favor undermines its power to regulate lawyers who violate state law. We of course agree that the State Bar must keep a close eye on attorneys and sanction those who misbehave. But the debt in this case was purely compensatory—an arbitration fee award between Scheer and her former client. It was not disciplinary. To categorize the fee dispute in this case as nondischargeable simply because the State expresses a strong regulatory interest in a particular industry would render any attorney-client fee dispute nondischargeable. Moreover, the State's logic would extend to fee disputes in any closely regulated industry—doctors, dentists, chiropractors, barbers, locksmiths, real estate agents, acupuncturists, tattoo artists, and so on. We require clearer language in section 523(a)(7) before we can endorse such an incremental yet horizonless approach—otherwise, we will end up boiling a frog that Congress never intended to leave the lily pad.

Consistent with *Kelly*, *Findley*, and the statute's plain language, we hold that the debt at issue in this case was

dischargeable, and does not qualify under section 523(a)(7)'s nondischargeability exception.[3]

## IV.  CONCLUSION

Scheer's performance as an attorney leaves much to be desired, and it is unsettling that she can use bankruptcy to avoid refunding her client's improperly collected fees.  But our moral take on Scheer's conduct does not control—the statutory language and policies underlying section 523(a)(7) do.  And under the current state of the law, the debt to her client does not fall within the section 523(a)(7) nondischargeability exception.[4]

## REVERSED AND REMANDED.

---

[3] In light of our holding, we remand to the district court to determine whether Scheer has stated a claim that defendants violated sections 525(a) and 362.  We leave it to the district court to decide whether it will take judicial notice of separate State Bar disciplinary proceedings against Scheer.  As we do not reach the question of whether Scheer's claims survive the State Bar's motion to dismiss, we deny without prejudice the State Bar's request for judicial notice of those proceedings.

[4] The Eleventh Amendment does not bar us from determining that Scheer's debt was discharged.  *See Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 373–78 (2006) ("In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts.").