JURISDICTION
I have jurisdiction over the parties and subject matter of this dispute pursuant to 28 U.S.C. §§ 1334 and 157(b)(2).
FINDINGS OF FACT
1. On June 10, 2006, Mrs. Dickerson received medical treatment at Valley Medical Center, incurring a pre-marital debt ("2006 Debt "). The debt was assigned to Merchants on October 19, 2006. (Ex. C-4).[2]
2. Mrs. Dickerson married the Debtor on July 7, 2007. (Ex. C-2).
3. On December 24, 2008, Mrs. Dickerson received additional medical treatment at Valley Medical Center, incurring a post-marital debt ("2008 Debt "). The debt was assigned to Merchants on April 28, 2009. (Ex. C-4).
4. On November 6, 2009, Merchants filed a collection lawsuit against Mrs. Dickerson and "John Doe Dickerson." (Ex. C-3). Default judgment was entered on January 7, 2010 in the amount of $ 6,219.93, consisting of the 2006 Debt and the 2008 Debt ("Default Judgment "). (Ex. C-4).
5. Merchants began garnishing Mrs. Dickerson's wages in February 2010. (Ex. D-5). The Debtor filed a Chapter 7 bankruptcy on February 12, 2012. (Dkt. No. 1).
6. After receiving notice of the bankruptcy petition, Merchants executed a partial release of the writ of garnishment in an attempt to limit the garnishment to collection on the 2008 Debt. (Ex. C-9). Merchants' collection notes for February 16, 2012 provide "we will amend garn[ishment] for the 2006 debt only as it was *105 prior to the marriage" ("Collection Notes "). (Ex. C-1, pg. 33).[3]
7. On March 2, 2012, Merchants received a telephone call from Debtor's then counsel, Andrew Gebelt. Mr. Gebelt advised Merchants that it needed to stop collection on both the 2006 Debt and the 2008 Debt to avoid a violation of the automatic stay. In that same phone call, Mr. Gebelt acknowledged that the 2006 Debt was not subject to the bankruptcy discharge and indicated that he would have no problem with garnishment recommencing after the discharge was entered. (Ex. C-1, pg. 34). A full release of the writ of garnishment, dated March 2, 2012, was filed in the King County District Court on March 8, 2012. (Ex. C-10).
8. Debtor was granted a discharge under Section 727 on June 12, 2012. (Dkt. No. 12). Upon receiving notice of the discharge order, Merchants amended Mrs. Dickerson's file, reflecting that she would only be responsible for the 2006 Debt as it was "not dischargeable as community debt." (Ex. C-1, pg. 35).
9. On August 1, 2012, Mr. Gebelt purportedly wrote a letter to Merchants advising it of its wrongful garnishment of Mrs. Dickerson's wages ("2012 Letter "). (Ex. D-53). The 2012 Letter discusses the effect of a discharge under Section 524(a) and advises the recipient that community claims are subject to the discharge injunction. Although Debtor asserts that the 2012 Letter was written to Merchants, it is unclear whether Merchants received the letter in 2012 or whether it was even intended for Merchants. (See Debtor's Reply, Dkt. No. 58 at 5:11-13).[4]
10. Nearly six years later, on April 18, 2018, Merchants renewed garnishment of Mrs. Dickerson's wages in the amount of $ 2,822.89 in an asserted attempt to collect on the portion of the Default Judgment attributable to the 2006 Debt. (Ex. C-12; Evidentiary Hr'g Tr. Dec. 13, 2018 at 102).
11. Between April 30, 2018 and May 21, 2018, Mrs. Dickerson called Merchants on at least sixteen different occasions to complain about the garnishment. (Ex. C-1, pgs. 40-44). During these communications, Mrs. Dickerson raised various grounds as to why the garnishment was improper - including assertions that service was inadequate, that the statute of limitations had passed and that the debt had been already paid off. However, at no point during any of the phone conversations did Mrs. Dickerson articulate the correct legal basis as to why the garnishment violated the discharge injunction. In addition, on April 30, 2018, Mrs. Dickerson faxed Merchants a copy of the 2012 Letter from Mr. Gebelt.
*106 (Ex. D-53). On May 3, 2018, a copy of the fax was emailed by a Merchants' employee to Jason Woehler, counsel for Merchants. (Ex. C-17). After reviewing the letter, Mr. Woehler indicated in an email to other employees at Merchants that collection of the 2006 Debt did not violate the discharge injunction because it was the pre-marital debt of a non-debtor spouse. (Ex. C-15).
12. After Mrs. Dickerson's unsuccessful attempts to persuade Merchants to release the writ of garnishment, Mrs. Dickerson retained attorney Chrstina Henry. On June 8, 2018, Ms. Henry sent a letter to the president of Merchants advising him that Merchants' ongoing collection of community property violated the "marital community discharge" and demanding that it cease all collection activity ("Henry Letter ," Ex. D-56). The letter was routed to Mr. Woehler for review. (Ex. C-1, pg. 44). Mr. Woehler testified that he was extremely busy during this time and that he did not recall seeing the Henry Letter until July 26, 2018.
13. At the Debtor's request, the bankruptcy case was reopened on June 26, 2018. The Debtor filed the Motion for Sanctions on July 24, 2018. (Dkt. Nos. 16 and 18).
14. Mr. Woehler testified that after he became aware of the arguments being made by Ms. Henry in the Motion for Sanctions, he immediately called bankruptcy attorney, James Dickmeyer, for advice. On August 3, 2018, Mr. Dickmeyer emailed Mr. Woehler after reviewing the Motion for Sanctions and indicated that Merchants may have possible exposure due to "post-discharge collection of what appears to be a community claim from community property." He further indicated that Merchants may have an argument that the debt was separate pre-marital debt and that it did not fall within the bankruptcy code's definition of a "community claim." (Ex. D-25). Mr. Woehler responded that he believed Merchants had been acting in good faith, but that he expected the president of Merchants to ask for a resolution with Ms. Henry. Id.
15. On August 22, 2018, Merchants released the writ of garnishment against Mrs. Dickerson. (Ex. C-29).
16. Alexandra Sandoval is a compliance officer at Merchants. She testified as to Merchants' corporate policies and procedures for debt collection. She credibly testified that prior to the pending dispute, Merchants did not have a policy prohibiting the collection of pre-marital debt of a non-debtor spouse after discharge. In her opinion, Mrs. Dickerson's situation was unique.
17. Carol Taylor is an operations manager at Merchants. She also has an ownership interest in the company. Ms. Taylor testified that Merchants' policy regarding separate pre-marital debts was established by prior counsel, Robert Freidman, who advised Merchants that Mrs. Dickerson's wages could be garnished to pay for a separate pre-marital debt. She further testified that Merchants relied on this advice and that it amounted to "institutional knowledge."
18. Scott Wiswall is an employee at Merchants who is responsible for managing bill collectors. Mr. Wiswall explained how Merchants deals with consumer complaints and helped translate the meaning of the various Collection Notes taken in connection with Mrs. Dickerson's file. He further testified that Merchants believed that it was appropriate to garnish Mrs. Dickerson's wages because the 2006 Debt was incurred prior to her marriage.
19. Mr. Woehler has been employed as counsel at Merchants since 2014. Mr. Woehler's responsibilities include reviewing pleadings and contracts and responding *107 to policy questions. He testified that up until Mrs. Dickerson's case, he was not aware of any other instances in which an objection had been raised about Merchants' collection of a pre-marital debt of a non-debtor spouse. It was his opinion that Merchants' activity did not violate the discharge injunction. He further testified that Merchants is a medium sized collection company with 75 employees for which he is the only attorney. Mr. Woehler stated that bill collectors routinely rely on company policies and systems to determine if their collection practices are allowed and only contact him in outstanding circumstances.
20. All four witnesses testified that Merchants has since revised its policies and procedures to prohibit collection of pre-marital debt of a non-debtor spouse upon entry of a bankruptcy discharge.
CONCLUSIONS OF LAW
A. Legal Standard
Under Section 727(a), subject to certain exceptions, a debtor is entitled to a discharge of his or her debts. Section 524 details the effect of a discharge and identifies the types of claims which are enjoined by the discharge injunction. The purpose of the discharge is to allow a debtor to achieve a "fresh start," free from the burden of excessive debts. Scheer v. The State Bar of Cal. (In re Scheer) , 819 F.3d 1206, 1209 (9th Cir. 2016). "A bankruptcy court may enforce the discharge injunction [under Section 105] by holding a party in contempt for knowingly violating the discharge." Lorenzen v. Taggart (In re Taggart) , 888 F.3d 438, 443 (9th Cir. 2018), cert. granted , --- U.S. ----, 139 S.Ct. 782, 202 L.Ed.2d 511, 2019 WL 98543 (2019) (citing Zilog, Inc. v. Corning (In re Zilog, Inc.) , 450 F.3d 996, 1007 (9th Cir. 2006) ).
To prove a violation of the discharge injunction, the debtor has the burden of showing by clear and convincing evidence that the creditor violated a specific and definite order of the court. Taggart , 888 F.3d at 443 (citing In re Bennett , 298 F.3d 1059, 1069 (9th Cir. 2002) ). The burden then shifts to the creditor to demonstrate why it was unable to comply. Id. In the Ninth Circuit, there is a two-part test for determining whether a contempt sanction is proper: (1) whether the creditor knew the discharge injunction was applicable to the actions in question; and (2) whether the creditor intended the actions which violated the injunction. Id. The debtor's burden of clear and convincing evidence applies not only to whether the stay has been violated, but also to the creditor's knowledge of the discharge injunction and whether the creditor intended its actions. See Emmert v. Taggart (In re Taggart) , 548 B.R. 275, 288 (9th Cir. BAP 2016), aff'd sub nom. Lorenzen v. Taggart (In re Taggart) , 888 F.3d 438 (9th Cir. 2018) ("[E]ach prong of the Ninth Circuit's two-part test for a finding of contempt... requires a different analysis, and distinct, clear, and convincing evidence supporting that analysis, before a finding of willfulness can be made.").[5]
"To satisfy the first prong, knowledge of the applicability of the injunction must be proved as a matter of fact and may not be inferred simply because the creditor knew of the bankruptcy proceeding."
*108 Taggart , 888 F.3d at 443. If a creditor has a good faith belief that the discharge injunction does not apply to the creditor's claim, then a finding of contempt is improper, even if the creditor's belief is unreasonable. Id. at 444 (citing Zilog , 450 F.3d at 1009 ).[6]
B. Merchants' Violation of the Discharge Injunction
To determine whether Merchants had a good faith belief that the discharge injunction did not apply to its claim, it is helpful to understand exactly how Merchants violated the injunction. Section 524(a)(3) provides in relevant part that a discharge in a case under title 11:
[O]perates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim....
§ 524(a)(3). Section 541(a)(2) places all interests of the debtor and debtor's spouse in community property within the bankruptcy estate. In other words, Section 524(a)(3) enjoins a creditor from collecting a community claim from the debtor's interest in community property acquired after the bankruptcy case is filed.
A community claim is defined as a claim "that arose before the commencement of the case concerning the debtor for which property of the kind specified in Section 541(a)(2) is liable." § 101(7) (emphasis added). The Ninth Circuit has elaborated on what it means for a claim to be "concerning the debtor" for purposes of Section 101(7). It is a debt owed by the debtor or debtor's spouse, which under state law could have been satisfied from community property that would have passed to the debtor's bankruptcy estate, whether or not such property existed at the time of bankruptcy. See In re Soderling , 998 F.2d 730, 733 (9th Cir. 1993) (citing Alan Pedler, Community Property and the Bankruptcy Reform Act of 1978 , 11 St. Mary's L.J. 349, 351-52 (1979); see also In re Kimmel , 378 B.R. 630, 635 (9th Cir. BAP 2007) ("Construing §§ 101(7) and 541(a)(2) together, a community claim, for bankruptcy purposes, is a prepetition claim for which the [debtor's] community property [is] liable.").
In Washington, property acquired by either spouse after marriage is presumptively community property. See RCW 26.16.030. This would include the wages of either spouse.[7] Debt incurred by either spouse during marriage is presumed to be a community debt. Oil Heat Co. of Port Angeles, Inc. v. Sweeney , 26 Wash. App. 351, 353, 613 P.2d 169 (1980). If a separate debt is incurred by a spouse or domestic partner prior to marriage, RCW 26.16.200 allows a creditor to collect upon community property if the debt was reduced to judgment within three years of the marriage. See generally Haley v. Highland , 142 Wash.2d 135, 150, 12 P.3d 119 (2000).
*109 Here, the 2008 Debt was incurred after the marriage and is therefore presumed to be community debt. Additionally, the 2006 Debt was reduced to judgment within three years of Mrs. Dickerson's marriage to the Debtor. Therefore, under Washington law, Merchants was permitted to collect from community property, including by garnishment of Mrs. Dickerson's post-marital wages. Upon the filing of the Debtor's bankruptcy, the 2006 Debt became a community claim despite being incurred as separate debt by Mrs. Dickerson.[8] Since the discharge injunction enjoins any collection of community property on account of a community claim, Merchants violated the discharge injunction when it garnished Mrs. Dickerson's post-discharge wages. Therefore, under Section 524(a)(3), Merchants was prohibited from collecting from community property on account of both the 2006 Debt and the 2008 Debt, even if the 2006 Debt was in fact separate debt incurred prior to marriage.[9]
C. The Parties' Arguments
Debtor contends that Merchants lacked a good faith belief that the discharge injunction did not apply. Although Debtor acknowledges the limitations set forth by the Taggart standard, he asserts that Merchants has a responsibility as a corporate debt collector to understand its rights and responsibilities under the bankruptcy code. Furthermore, Debtor asserts that Merchants lacked good faith when it refused to release the writ of garnishment after it received numerous communications from Mrs. Dickerson. Similarly, Debtor argues that Merchants acted with "willful blindness" by not immediately addressing the Henry Letter and by delaying until August 22, 2018 to release the writ of garnishment.
Merchants argues that sanctions should not be imposed because it operated with a good faith belief that Debtor's discharge injunction did not apply to the 2006 Debt. Merchants contends that it tailored its actions as to not violate the discharge injunction by independently bifurcating the Default Judgment as to seek collection on only pre-marital debts. Merchants asserts that it relied on the advice of counsel and followed established policies and procedures in garnishing Mrs. Dickerson's wages and that it was unaware that garnishing Mrs. Dickerson's wages for a pre-marital debt violated the discharge injunction.
*110 D. Analysis and Disposition
As noted above, to prove a sanctionable violation of the discharge injunction, Debtor must show by clear and convincing evidence that Merchants lacked a good faith belief that the discharge injunction applied to its claim, even if such belief was unreasonable.
It would appear that Merchants believed at the time of the bankruptcy filing in 2012 that the 2006 Debt could be collected by garnishing Mrs. Dickerson's wages because it was incurred prior to marriage. Upon being notified of Debtor's bankruptcy, Merchants attempted to differentiate between the pre and post-marital debts by issuing a partial release of the writ to only purportedly seek collection on the 2006 Debt. Merchants continued its "partial garnishment" until it was contacted by Mr. Gebelt, who asserted that it was violating the automatic stay. Even during this communication, Merchants indicated, and Mr. Gebelt agreed, as reflected in the Collection Notes, that Merchants could recommence garnishment of Mrs. Dickerson's wages for the 2006 Debt upon entry of discharge. The fact that Mr. Gebelt, an experienced bankruptcy attorney, understood the discharge injunction to only prohibit garnishment of Mrs. Dickerson's wages on post-marital debt supports Merchants' assertion that it acted in good faith. After Debtor's bankruptcy discharge was entered, Merchants provided in the Collection Notes that Mrs. Dickerson would only be responsible for the 2006 Debt. All four witnesses from Merchants testified that Merchants followed its existing policies and believed that it could garnish Mrs. Dickerson's wages if Merchants were collecting on her separate pre-marital debt. Merchants' partial release of the writ of garnishment in an attempt to collect only on the pre-marital portion of the Default Judgment is consistent with its assertions that it believed in good faith that it was not violating the discharge injunction.
The various communications between Merchants and Mrs. Dickerson do not indicate a lack of good faith under the Taggart standard. Throughout various phone calls received from Mrs. Dickerson, phone operators at Merchants listened to Mrs. Dickerson's complaints and informed her that the discharge injunction did not apply to the 2006 Debt. Mrs. Dickerson never articulated the correct specific legal basis under which Merchants was in violation of the discharge injunction. Furthermore, in April 2018, when Mrs. Dickerson faxed the 2012 Letter, Merchants forwarded it to counsel, Mr. Woehler, who reviewed the legal issue and determined, albeit incorrectly, that the discharge injunction did not apply. These communications, and the corresponding Collection Notes, support Merchants' assertion that it acted in good faith.
Even after the Henry Letter was sent to Merchants, it is unclear whether Merchants knowingly violated the discharge injunction when it failed to immediately release the writ of garnishment. The fact that Merchants was advised of the correct state of the law does not prove, by clear and convincing evidence, that Merchants lacked good faith in its asserted belief that it was acting in accordance with the law. After Debtor filed the Motion for Sanctions, Merchants immediately contacted James Dickmeyer, who advised Merchants that it had potential liability. Mr. Woehler testified that he viewed Mr. Dickmeyer's assessment as equivocal, but that Merchants decided to release the writ of garnishment to limit its potential exposure. Even at the hearing on the Motion for Sanctions, Merchants continued to argue that it believed Section 101(7)'s definition of community claim was unclear and that the phrase "concerning the debtor" did not *111 incorporate Mrs. Dickerson's separate 2006 Debt. Lastly, the non-intuitive nature of the law at issue - which prohibits the collection of the separate debt of a non-debtor spouse if collectible from community assets - lends support to the notion that Merchants acted with a good faith, even if misguided, belief that the 2006 Debt was not subject to the discharge injunction.
For the foregoing reasons, I conclude that Debtor has not shown, by clear and convincing evidence, that Merchants knowingly violated the discharge injunction. Under Taggart , sanctions are improper if the creditor has a good faith belief that the discharge injunction does not apply to its claim, even if that belief is unreasonable. I sympathize with the Debtor's frustration and acknowledge the high bar set under Taggart . I also recognize that the decision in Taggart has been appealed to the Supreme Court and that the applicable standard may, perhaps, be different in the future. That said, Debtor has not met his burden and sanctions are therefore improper.
E. Inherent Sanctions
The Debtor also requests relief under my inherent sanctioning authority. Inherent sanctions are only appropriate upon a specific finding of bad faith or willful misconduct. Knupfer v. Lindblade (In re Dyer) , 322 F.3d 1178, 1197 (9th Cir. 2003). Bad faith or willful misconduct consists of something more egregious than negligence or recklessness, and mere ignorance or inadvertence is not sanctionable under inherent authority. Id. Unlike statutory civil contempt sanctions, inherent sanctions may be used to sanction a broad range of conduct not limited to a violation of a specific order. Price v. Lehtinen (In re Lehtinen) , 564 F.3d 1052, 1058 (9th Cir. 2009). "Because of their very potency, inherent powers must be exercised with restraint and discretion." Id. at 1059 (quoting Chambers v. NASCO, Inc. , 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). For the reasons articulated earlier, Debtor has not shown that Merchants lacked good faith in its belief that it could garnish Mrs. Dickerson's wages, thus I am not able to make a specific finding of bad faith or willful misconduct. I therefore conclude that sanctions under my inherent authority are not appropriate.
CONCLUSION
In sum, Debtor has not proved, by clear and convincing evidence, that Merchants knowingly violated the discharge injunction. Civil contempt sanctions under Section 105 are therefore inappropriate. Similarly, sanctions under my inherent authority are also inappropriate. Counsel for Merchants should submit a separate order denying the Debtor's Motion for Sanctions.

At the evidentiary hearing, Merchants labeled its exhibit list: X1-X32. I herein refer to those same exhibits using the notation: C1-C32.

Although Merchants filed a partial release of the writ of garnishment and asserted that it sought only to collect the pre-marital debt, nothing within the document itself expressly limits its application to collection of the 2006 Debt. Furthermore, Merchants does not explain in detail how it calculated the amount included in the partial release or how it was able to independently bifurcate the amount owed on the Default Judgment, which consisted of both the pre and post-marital debt. No evidence was presented, and the Collection Notes do not reflect whether Merchants ever attempted to amend the Default Judgment to release the portion of the judgment attributable to the 2008 Debt.

There is nothing within the letter identifying Merchants as the recipient nor is there any acknowledgment of its receipt in the Collection Notes. Furthermore, the letter appears to be a generic "dear creditor" letter to be used by Mr. Gebelt's client in the event of any attempts to collect on pre-petition debt against community property. The 2012 Letter does not identify facts specific to Merchants nor does it reference the phone call between Mr. Gebelt and Merchants which happened months earlier. I also note that the date of discharge reflected in the letter is incorrect.

Debtor argued at closing argument that the burden of proof shifted to Merchants upon my prior determination that Merchants violated the discharge injunction. In support of his argument, Debtor relies on the burden shifting test outlined in Bennett , 298 F.3d at 1069. However, subsequent case law makes clear that sanctions for a discharge violation are only proper if the debtor also proves by clear and convincing evidence that the creditor knowingly violated the discharge injunction by intentional acts.

Debtor asserts in his reply brief that the good faith standard, as set forth in Taggart , is unfair, overly broad and results in a split with other circuits. See generally Petition for Writ of Certiorari, Taggart , , --- U.S. ----, --- S.Ct. ----, --- L.Ed.2d ----, 2018 WL 5026297 (2018). I note that the Supreme Court has recently granted certiorari to review this legal question.

Merchants asserted that its prior long-time counsel, Robert Friedman, had advised it that wages are not a community asset until deposited in a joint bank account of a married couple. See Merchants' Br., Dkt. No. 88 at 6. However, it does not appear that any testimony was elicited on this point.

Debtor also argued that the 2006 Debt became a debt against the Debtor by virtue of its inclusion in the Default Judgment and was discharged in the bankruptcy case. Although the Complaint asserts that the entire debt subject to the lawsuit "is the community and separate obligation of each [of the defendants]," the Default Judgment is silent as to whether it is joint and several and whether the Default Judgment is a community or separate obligation. Any separate liability of Mrs. Dickerson was not, per se, discharged. See Heilman v. Heilman (In re Heilman) , 430 B.R. 213, 219 (9th Cir. BAP 2010) (holding that the debtor's discharge did not discharge the non-debtor spouse's separate liability on community claims). Because Merchants violated the discharge injunction regardless of whether the debt is characterized as community debt or separate debt, the legal distinction has no consequential effect on this determination (other than the extent to which it is relevant to Merchants' good faith belief that the discharge injunction did not apply to its claim).

Counsel for the Debtor conceded at closing argument that if the debt owed to Merchants was in fact separate, it was not discharged in Debtor's bankruptcy and was subject to collection from Mrs. Dickerson's separate property. Therefore, if Mrs. Dickerson had separate property, such as pre-marital assets or a post-marital inheritance, Merchants would be able to collect on Mrs. Dickerson's separate debt. See RCW 26.16.010.