137 Nev., Advance Opinion 59

IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF DISCIPLINE OF CHRISTOPHER R. ARABIA, BAR NO. 9749.

No. 82173

FILED

SEP 23 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Automatic review of a disciplinary board hearing panel's recommendation for attorney discipline.

*Attorney publicly reprimanded.*

Pitaro & Fumo, Chtd., and Thomas F. Pitaro and Emily K. Strand, Las Vegas,
for attorney Christopher R. Arabia.

Daniel M. Hooge, Bar Counsel, Las Vegas, and R. Kait Flocchini, Assistant Bar Counsel, Reno,
for State Bar of Nevada.

BEFORE THE SUPREME COURT, CADISH, PICKERING, and HERNDON, JJ.

*OPINION*

By the Court, HERNDON, J.:

Attorneys who practice law in Nevada are "subject to the exclusive disciplinary jurisdiction of the supreme court and the disciplinary boards and hearing panels created by [the Supreme Court Rules]." SCR 99(1). In this attorney discipline case, we are asked to make an exception for attorneys who hold public office either because they are entitled to

qualified immunity or because they are subject exclusively to the jurisdiction of the Commission on Ethics for misconduct committed while in office. We reject both arguments. When an attorney is elected to public office and then violates the Rules of Professional Conduct, the attorney's position as an elected official does not entitle the attorney to qualified immunity from professional discipline. Further, the Commission on Ethics' authority over public officers is not exclusive. Therefore, an attorney who engages in professional misconduct while in public office remains subject to the disciplinary jurisdiction of this court and the disciplinary boards and hearing panels created under the Supreme Court Rules regardless of whether the misconduct also falls within the Commission on Ethics' jurisdiction. Because the State Bar proved by clear and convincing evidence that attorney Christopher Arabia violated two rules of professional conduct and a public reprimand sufficiently serves the purpose of attorney discipline under the circumstances, we adopt the hearing panel's recommendation and reprimand Arabia for violations of RPC 1.7 (conflict of interest: current clients) and RPC 8.4(d) (misconduct prejudicial to the administration of justice).[1]

## FACTS

Arabia has been licensed to practice law in Nevada since 2006 and has no prior discipline. He is currently the duly elected Nye County District Attorney.

On September 15, 2019, Arabia terminated Michael Vieta-Kabell's employment as an assistant district attorney. Vieta-Kabell maintained that he was terminated because he had been attempting to

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted.

unionize assistant district attorneys, but Arabia asserts the termination was the result of Vieta-Kabell's job performance.

Vieta-Kabell filed an appeal of his termination with Nye County on September 23, 2019. The Human Resources Director for Nye County, Danelle Shamrell, sent both Vieta-Kabell and Arabia an email on September 24, scheduling the appeal for a hearing. That same day, Arabia sent an email to Shamrell, but not Vieta-Kabell, stating, "[i]t is my legal opinion as the Nye County District Attorney that you must cease and desist from conducting the proposed hearing." Arabia's email asserted that because Vieta-Kabell was an at-will employee, Arabia had the right to terminate Vieta-Kabell at any time, and thus, an appeal hearing was not available to Vieta-Kabell. Arabia ended the email by stating, "[p]lease confirm via e-mail no later than 4:00 p.m. on Thursday, September 26, 2019 that you have vacated the proposed hearing regarding Mr. Vieta-Kabell." At the subsequent disciplinary hearing, Shamrell testified that "[t]he DA's Office provides legal advice to the County, and he told me to cancel it. And so, based on the fact that he's who he is, the DA, I did what I was told to do." Thus, the next day, on September 25, Shamrell emailed Vieta-Kabell stating, "[b]ased on direction from Chris Arabia, Nye County District Attorney I have been instructed to cease and desist from conducting the requested hearing and as such there will not be the hearing."

Vieta-Kabell filed a grievance against Arabia with the State Bar. Arabia responded to the grievance stating he "was not acting as the County's counsel with respect to this matter and therefore provided no advice or counsel." Arabia further asserted that "[t]he County had Attorney [Rebecca] Bruch representing it and decided to cancel the hearing." However, Arabia later provided emails demonstrating that Bruch was not retained until the morning of September 25, after he had sent the email

SUPREME COURT
OF
NEVADA

(O) 1947A

3

requesting the hearing be canceled. Additionally, Bruch testified that when she was retained by Nye County, her scope of representation did not include whether there should be a County hearing, and instead, related to an Employee Management Relations Board claim filed by Vieta-Kabell.

Before the disciplinary hearing, Arabia moved to dismiss the bar complaint twice, the first time because he asserted he was protected under qualified immunity, and the second time because he argued the State Bar lacked jurisdiction over him as an elected official. Arabia's motions were denied.

At the hearing, Arabia testified that he did not direct the hearing to be vacated and that "it was a request." In contrast to his letter responding to the grievance, he testified that he did not wait for Bruch to become involved because he did not think that the hearing would even trigger her involvement. He acknowledged that if terminating Vieta-Kabell's employment "was wrong, then I'm going to take the hit on that. I get that. I'm talking about me as the District Attorney." Arabia, however, also stated that telling the County not to hold the hearing was the right and proper thing to do.

The hearing panel found in a 2-1 vote that Arabia violated RPC 1.7 (conflict of interest: current clients) and RPC 8.4(d) (misconduct prejudicial to the administration of justice), but unanimously found that his conduct was negligent, rather than knowing or intentional. The panel found two aggravating circumstances (substantial experience in the practice of law and failure to accept wrongfulness of the conduct) and one mitigating circumstance (lack of prior discipline). The panel has recommended Arabia be reprimanded and ordered to pay the costs of the disciplinary proceeding.

## DISCUSSION

Before we consider the hearing panel's findings and the appropriate discipline, we must address Arabia's arguments that this matter should be dismissed because he has qualified immunity and the State Bar lacked jurisdiction over him.[2]

*Qualified immunity does not apply to attorney disciplinary proceedings*

Arabia contends that he cannot be professionally disciplined because his actions are entitled to protection under the qualified immunity doctrine, and thus, this matter must be dismissed. We disagree.

The qualified immunity doctrine "provides that government actors following statutory guidelines or exercising their discretion are immune from common law tort actions in connection with their statutory duties or their discretion." *City of Boulder City v. Boulder Excavating, Inc.*, 124 Nev. 749, 756, 191 P.3d 1175, 1179 (2008). NRS 41.032(2) provides in relevant part that "no action may be brought . . . against an . . . officer or employee of the State . . . which is . . . [b]ased upon the exercise or

---

[2]Arabia also contends the State Bar should have been disqualified from pursuing the underlying disciplinary complaint because Vieta-Kabell worked for the State Bar when he filed the grievance and because the State Bar has employed two other attorneys Arabia fired from the Nye County District Attorney's Office. While Vieta-Kabell filed the underlying grievance during his State Bar employment, his employment lasted just one-and-a-half months, and because Arabia did not respond to the grievance until after Vieta-Kabell left the State Bar, Vieta-Kabell was not employed by the State Bar during the majority of the investigation or disciplinary proceedings. The record further demonstrates that the two former Nye County Deputy District Attorneys who worked at the State Bar were properly screened from this matter. Additionally, in an abundance of caution, this matter was handled by bar counsel in the Northern Nevada office, when it would normally be assigned to the Southern Nevada office. Thus, we conclude there was no conflict of interest requiring the State Bar's disqualification.




performance or the failure to exercise or perform a discretionary function or duty." The first step to determining whether qualified immunity is available to Arabia is to determine if an attorney discipline proceeding qualifies as an "action" under NRS 41.032.

As discussed in *Boulder City*, qualified immunity generally applies in actions where the plaintiff seeks damages or redress for the government employee's actions. 124 Nev. at 756, 191 P.3d at 1179. An attorney discipline proceeding is not such an action. The purpose of an attorney discipline proceeding is to protect the public, the courts, and the legal profession, not to make the grievant whole or punish the attorney. *State Bar of Nev. v. Claiborne*, 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988). Therefore, even though disciplinary proceedings are generally treated as civil actions, *see* SCR 119(3) (providing that "[e]xcept as otherwise provided in these rules, the Nevada Rules of Civil Procedure and the Nevada Rules of Appellate Procedure apply in disciplinary cases"), they are not the type of common law actions to which qualified immunity generally applies.

The conclusion that qualified immunity does not extend to an attorney discipline proceeding finds support in cases where courts have determined that a prosecutor enjoyed qualified immunity from civil liability. In particular, courts often point to the availability of professional discipline as a counterbalance that offers a means to deter misconduct when qualified immunity otherwise protects a prosecutor from civil liability. For example, the United States Supreme Court has explained that a prosecutor's immunity from liability in Section 1983 suits "does not leave the public powerless to deter misconduct" because a prosecutor is subject "to professional discipline by an association of his peers." *Imbler v. Pachtman*, 424 U.S. 409, 428-29 (1976). Similarly, a few of our sister states

have recognized that where a civil action must be dismissed because of qualified immunity or litigation privilege, the attorney may still be subject to professional discipline. *See, e.g., Silberg v. Anderson*, 786 P.2d 365, 373-74 (Cal. 1990) (recognizing that although a tort action based on communications between participants in earlier litigation is precluded under immunity or privilege principles, an attorney may nevertheless be subject to discipline for such a communication); *Wright v. Yurko*, 446 So. 2d 1162, 1164 (Fla. Dist. Ct. App. 1984) (providing that there can be no civil action for slanderous statements made during the course of an action and the remedies for such slander "are left to the discipline of the courts, the bar association, and the state"); *Hawkins v. Harris*, 661 A.2d 284, 288 (N.J. 1995) ("Although the public policy served by the absolute privilege immunizes the defamer from a civil damage action, the privilege does not protect against professional discipline for an attorney's unethical conduct."); *Kirschstein v. Haynes*, 788 P.2d 941, 950 (Okla. 1990) (recognizing that the litigation privilege may apply to protect statements made by an attorney from tort liability, but such privilege does not protect against professional discipline if those statements are also unethical conduct), *superseded by rule on other grounds as stated in Dani v. Miller*, 374 P.3d 779, 785 n.1 (Okla. 2016); *see also* Casey L. Jernigan, *The Absolute Privilege Is Not a License to Defame*, 23 J. Legal Prof. 359, 365-70 (1999); Judith Kilpatrick, *Regulating the Litigation Immunity: New Power and a Breath of Fresh Air for the Attorney Discipline System*, 24 Ariz. St. L. J. 1069, 1081 (1992).

Because attorney disciplinary proceedings are a mechanism for deterring professional misconduct and protecting the public, the courts, and the legal profession, we conclude a disciplinary proceeding is not the type of action to which NRS 41.032 applies. Therefore, an attorney who is a public

officer or employee cannot rely on qualified immunity to escape professional discipline.

*The State Bar had jurisdiction over the underlying grievance against Arabia*

Arabia next contends the State Bar lacked jurisdiction over him because only the Commission on Ethics can bring a disciplinary complaint against him for conduct undertaken as a public officer.[3] We disagree because the Commission's jurisdiction over public officers is not exclusive.

The Legislature passed the Nevada Ethics in Government Law, NRS Chapter 281A, to promote the integrity and impartiality of public officers. *See* NRS 281A.020 (stating legislative findings and declarations); 1977 Nev. Stat., ch. 528, § 3, at 1103 (noting the passing of the law). In doing so, the Legislature created the Commission on Ethics and authorized it to issue advisory opinions and resolve ethics complaints against public officers. NRS 281A.680; NRS 281A.710; NRS 281A.765. "[T]he Commission has jurisdiction to investigate and take appropriate action regarding an alleged violation of [NRS Chapter 281A] by a public officer" when an ethics complaint has been filed with or initiated by the Commission. NRS 281A.280(1).

When interpreting a statute, we focus on its plain language. *City of Sparks v. Reno Newspapers, Inc.*, 133 Nev. 398, 402, 399 P.3d 352, 356 (2017) ("When interpreting a statute, if the statutory language is facially clear, this court must give that language its plain meaning."

---

[3]Arabia acknowledged in his reply brief that the State Bar and the Commission on Ethics could have dual jurisdiction except where qualified immunity is at issue. To the extent Arabia still challenges the State Bar's jurisdiction despite our conclusion regarding qualified immunity, we address that jurisdictional argument herein.

(internal quotation marks omitted)). Nothing in NRS 281A.280(1) or elsewhere in NRS Chapter 281A states that the Commission's jurisdiction is exclusive.[4] In contrast, the Legislature has used explicit language elsewhere when it intends to grant exclusive jurisdiction. For example, NRS 1.440(1) provides that the Commission on Judicial Discipline "has exclusive jurisdiction" to discipline judges. *See also* NRS 3.223(1) (affording the family court "original, exclusive jurisdiction" over certain identified proceedings); NRS 7.275(1) (providing that the State Bar of Nevada is "under the exclusive jurisdiction" of the Nevada Supreme Court); NRS 32.255 (providing that the court that appoints a receiver "has exclusive jurisdiction to direct the receiver and determine any controversy related to the receivership or receivership property"); NRS 62B.320(1) (providing that "the juvenile court has exclusive original jurisdiction" over certain proceedings involving a child in need of supervision).

Similarly, nothing in the Supreme Court Rules suggests that the normal disciplinary authority over attorneys practicing law in Nevada is limited when the attorney involved is an elected official. The State Bar is authorized to investigate and prosecute all possible attorney misconduct. SCR 104(1)(a), (c) (providing "State Bar counsel shall . . . [i]nvestigate all matters involving possible attorney misconduct" and "[p]rosecute all proceedings under these rules"). SCR 99(1) provides that *"[e]very* attorney admitted to practice law in Nevada . . . is subject to the exclusive

---

[4]In fact, NRS 281A.280(2) recognizes that the Commission on Ethics' jurisdiction is not exclusive when the grievance concerns an employment issue. *See* NRS 281A.280(2) (providing dual jurisdiction when an employment-related grievance pertains to alleged discrimination or harassment but also includes separately or concurrently alleged conduct that is sanctionable under NRS Chapter 281A).

disciplinary jurisdiction of the supreme court and the disciplinary boards and hearing panels created by these rules." (Emphasis added.) Accordingly, the State Bar has jurisdiction to pursue attorney discipline against any attorney practicing law in Nevada, regardless of whether the attorney is an elected official.

The scope of the Commission's jurisdiction further indicates that its jurisdiction is not exclusive when it comes to public officers who are attorneys. Specifically, the Commission only has jurisdiction over alleged violations of the ethics standards set forth in NRS Chapter 281A. Those standards are not coextensive with the Rules of Professional Conduct that establish ethical guidelines for attorneys practicing law in this state. For example, RPC 3.8(f) lays out special responsibilities for prosecutors, including not "making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused." There is no similar provision in the ethical standards set forth in NRS 281A.400-.550. Thus, if the Commission had exclusive jurisdiction over an elected district attorney, there would be no means to deter a prosecutor or protect the public and the profession when a prosecutor engaged in misconduct that clearly violates the Rules of Professional Conduct but does not also implicate the ethics standards set forth in NRS Chapter 281A. That absurd result further convinces us that an attorney's election to public office does not deprive the State Bar of its authority to initiate disciplinary proceedings against that attorney for a violation of the Rules of Professional Conduct.

Because nothing in NRS Chapter 281A provides the Commission on Ethics with exclusive jurisdiction and the attorney discipline system serves a different purpose than the Ethics in Government Law codified in NRS Chapter 281A, we conclude the State Bar could proceed with disciplinary proceedings against Arabia regardless of whether his

conduct also fell within the Commission on Ethics' jurisdiction. If an attorney who is subject to NRS Chapter 281A violates the Rules of Professional Conduct *and* the ethics standards in NRS Chapter 281A, the State Bar disciplinary process would address the violation of the Rules of Professional Conduct and the Commission on Ethics would address the NRS Chapter 281A violation. Any discipline imposed by the Commission on Ethics could be considered in the State Bar disciplinary process. *See* SCR 102.5(2)(l) (providing that "imposition of other penalties or sanctions" qualify as mitigating circumstances in disciplinary proceedings). Accordingly, the Disciplinary Panel Chairman did not err by denying Arabia's motion to dismiss for lack of jurisdiction on this ground.

*Substantial evidence supports the panel's findings of misconduct*

As to the merits of the complaint, Arabia argues the State Bar failed to prove the allegations by clear and convincing evidence because (1) he had no personal stake in the outcome of the County hearing so he had no conflict of interest, and (2) he did not exert control over County employees to have the hearing vacated. We disagree.

The State Bar has the burden of showing by clear and convincing evidence that Arabia committed the violations charged. *In re Discipline of Drakulich*, 111 Nev. 1556, 1566, 908 P.2d 709, 715 (1995). To be clear and convincing, evidence "need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts from which a legitimate inference . . . may be drawn." *In re Discipline of Schaefer*, 117 Nev. 496, 515, 25 P.3d 191, 204 (internal quotation marks omitted), *as modified by* 31 P.3d 365 (2001). Our review of the panel's findings of fact is deferential, SCR 105(3)(b), and we will uphold the factual findings regarding an attorney's misconduct if they "are not clearly erroneous and are supported by substantial evidence," *Sowers v. Forest Hills Subdiv.*, 129

Nev. 99, 105, 294 P.3d 427, 432 (2013) (explaining deferential standard of review in civil actions).

*Arabia violated RPC 1.7*

RPC 1.7(a) precludes a lawyer from representing "a client if the representation involves a concurrent conflict of interest." A concurrent conflict of interest may exist if "[t]here is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." RPC 1.7(a)(2). If a lawyer believes he or she may still provide competent and diligent representation in spite of the concurrent conflict of interest, the lawyer may still represent the client if, among other requirements, "[e]ach affected client gives informed consent, confirmed in writing." RPC 1.7(b)(4).

The impetus of the conflict of interest rule is to ensure "[l]oyalty and independent judgment[, which] are essential elements in the lawyer's relationship to a client." *Model Rules of Prof'l Conduct* r. 1.7 cmt. 1 (Am. Bar Ass'n 2016). Thus, a "lawyer's own interests should not be permitted to have an adverse effect on representation of a client." *Id.* at cmt. 10. "For example, if the probity of a lawyer's own conduct in a transaction is in serious question, it may be difficult or impossible for the lawyer to give a client detached advice." *Id.* "The primary rationale behind the general rule on adverse personal interests is simple: When there's friction between the interests of a lawyer and a client, the lawyer's loyalties are divided or confused and her effectiveness is diminished." *Lawyers' Manual on Professional Conduct: Practice Guides*, 51 Conflicts of Interest 401, 401.20.50 (Am. Bar Ass'n & Bureau of Nat'l Affairs, Inc. 2021). In particular, when a client's interests are inconsistent with the lawyer's personal interests, the lawyer "may be tempted to recommend courses of

action that benefit the lawyer more than the client, or may be inclined to avoid choices that could damage or impair [the lawyer's] own interests." *Id.*

Personal interests that may impair a lawyer's representation of a client include "the financial, business, property, professional or personal aspects of the lawyer's life." *Id.* at 401.10. While the most obvious examples involve the lawyer's financial or familial relationships, not all personal conflicts fall into these areas. Restatement (Third) of the Law Governing Lawyers § 125 cmt. c (Am. Law Inst. 2000). "Clients' interests also clash sometimes with their attorneys' own interests in their professional reputations and affiliations." 51 Conflicts of Interest at 401.20.190. Thus, a lawyer's political, social, professional, or emotional interests or beliefs may lead the lawyer to act in the lawyer's own self-interest or in others' interests, rather than in their client's best interest. Bruce A. Green & Rebecca Roiphe, *Rethinking Prosecutors' Conflicts of Interest*, 58 B.C. L. Rev. 463, 472 (2017). Accordingly, determining if a lawyer's personal interests create a concurrent conflict with a client depends on the facts and circumstances of each case.

Considering the facts and circumstances here, substantial evidence supports the panel's finding that Arabia had a concurrent conflict of interest because he had a personal interest in ensuring Nye County vacated Vieta-Kabell's termination appeal hearing. First, it was in Arabia's interest to have the appeal hearing not only vacated, but vacated quickly. Arabia sent his cease-and-desist email almost immediately after the hearing was scheduled. He acknowledged at the disciplinary hearing that he knew it was common practice for the County to retain independent counsel in similar circumstances and generally that counsel was retained quickly. Thus, the record supports that he knew it would be in his best interest to immediately send a strongly worded email to the County's

human resources director stating his legal opinion that she must vacate the hearing. Second, Arabia had a professional interest in ensuring the hearing was vacated. It is clear from the record that Arabia did not want to be forced to rehire Vieta-Kabell. Further, Vieta-Kabell's grievance complains that he was terminated primarily because he was attempting to unionize the deputy district attorneys in the office, and if such a complaint were addressed at the appeal hearing, a significant conflict-of-interest risk emerges based on Arabia's interest in maintaining his professional reputation. Arabia even acknowledged he had a professional interest at the disciplinary hearing by stating that he would "take the hit" if terminating Vieta-Kabell had been wrong.

In a case addressing similar conflict-of-interest concerns, the New Jersey Supreme Court determined that even though the Legislature permitted the same person to hold two municipal offices, an attorney could not serve as both the municipal attorney and the clerk-administrator for the same municipality because such service would present concurrent conflicts of interest based on the attorney's own professional interests. *In re Advisory Comm. on Prof'l Ethics, Docket No. 18-98*, 745 A.2d 497, 502 (N.J. 2000). In reaching that decision, the court reasoned that there would likely come a time when the municipal attorney would have to give the municipal body— the mayor and council—advice concerning his own conduct as clerk-administrator. *Id.* For example, the court noted there may come a time when the clerk-administrator's decision in an employment matter is challenged and the municipal body would need access to independent counsel and advice from the municipal attorney concerning whether the employment decision was proper. *Id.*

To the extent Arabia argues the County had independent counsel appointed to represent it in this matter, the record demonstrates

(O) 1947A

that the County did not contact Bruch until after Arabia sent his cease-and-desist email, and even then the County contacted Bruch about a different matter.[5] Additionally, the panel's finding that Arabia's email qualified as legal advice is supported by substantial evidence. While the dissent asserts that Arabia testified he was acting in his executive capacity, the record does not support this assertion as Arabia never provided testimony regarding his "executive capacity." Additionally, in the email itself, Arabia wrote, "It is my *legal opinion* as the Nye County District Attorney . . . ." (Emphasis added.) Further, Shamrell testified that she regularly received legal advice on County matters from Arabia, and nothing in the email indicated this instance was different from any other time Arabia provided such advice. Therefore, the record supports the panel's conclusion that Arabia sent his cease-and-desist email as part of his representation of the County. Because there was a significant risk that Arabia's representation of the County would be materially limited by his personal interest in having the appeal hearing vacated, Arabia had a duty to disclose the conflict of interest to the County and obtain a written waiver before advising the County on whether the appeal hearing was appropriate, which he did not do here. Accordingly, substantial evidence supports the panel's finding that Arabia violated RPC 1.7 (conflict of interest: current clients).[6]

------

[5]The dissent overstates the scope of Bruch's representation and the impact it had on the County's decision to vacate the hearing. Bruch testified that she was not retained in relation to this hearing.

[6]While the dissent concludes that the record does not support the panel's finding that Arabia violated RPC 1.7(a)(2) because there was not substantial evidence that Arabia had a disabling personal interest that caused harm to his representation of Nye County, the dissent misstates the rule. RPC 1.7(a)(2) provides that a concurrent conflict of interest may exist if "[t]here is *a significant risk* that the representation of one or more clients

*Arabia violated RPC 8.4(d)*

RPC 8.4(d) provides "[i]t is professional misconduct for a lawyer to . . . [e]ngage in conduct that is prejudicial to the administration of justice." "For purposes of this rule, prejudice requires either repeated conduct causing some harm to the administration of justice or a single act causing substantial harm to the administration of justice." *In re Discipline of Colin*, 135 Nev. 325, 332, 448 P.3d 556, 562 (2019) (internal quotation marks omitted). RPC 8.4(d) addresses conduct that "is intended to or does disrupt a tribunal." *Id.* The rule applies to conduct occurring inside or outside of a courtroom and because other adjudicatory bodies, such as administrative tribunals, may administer justice, RPC 8.4(d) applies to an attorney's conduct in relation to an administrative proceeding. *See id.*; RPC 1.0(m) ("'Tribunal' denotes a court, an arbitrator in a binding arbitration proceeding or a legislative body, administrative agency or other body acting in an adjudicative capacity. A legislative body, administrative agency or other body acts in an adjudicative capacity when a neutral official, after the presentation of evidence or legal argument by a party or parties, will render a binding legal judgment directly affecting a party's interests in a particular matter.")[7]

The record demonstrates that Shamrell canceled the hearing based solely on Arabia's cease-and-desist email. Arabia's conduct not only

---

will be materially limited . . . by a personal interest of the lawyer." (emphasis added).

[7]While we reference the definition of "tribunal" under RPC 1.0(m) as part of our discussion of Arabia's violation of RPC 8.4(d), we note that Arabia has not challenged whether the instant proceedings met the definition of "tribunal."

(O) 1947A

disrupted an administrative tribunal, but prohibited the administrative proceeding from ever occurring.[8] Thus, substantial evidence supports the panel's finding that Arabia's conduct violated RPC 8.4(d) (misconduct prejudicial to the administration of justice).

*A reprimand is appropriate*

In determining the appropriate discipline, this court weighs four factors: "the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors." *In re Discipline of Lerner*, 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008). Although this court determines the appropriate discipline de novo, SCR 105(3)(b), the hearing panel's recommendation is persuasive, *Discipline of Schaefer*, 117 Nev. at 515, 25 P.3d at 204.[9]

---

[8]If the hearing had been improper as Arabia alleged, that would have been determined in due course, instead of the hearing being canceled on the advice of someone who had a personal interest in the hearing never occurring. We note even the dissent acknowledges that the issue of whether the hearing was proper should not have been resolved on such short notice. If Arabia had not expedited his cease-and-desist demand, Nye County would have had a matter of weeks to determine whether it should conduct the hearing.

Nevertheless, the issue presented here is not whether Arabia gave correct advice, but whether he should have given the advice at all based on a conflict of interest, without a written waiver. Because this matter concerns Arabia's ethical violations and does not concern whether the hearing was proper, we do not reach that issue.

[9]Arabia focused his arguments on whether he committed misconduct and did not present any argument regarding what would be appropriate discipline for such misconduct.

SUPREME COURT
OF
NEVADA

(O) 1947A

Arabia violated duties owed to his client (conflict of interest) and the profession (misconduct). Nye County was potentially injured, and Arabia interfered with an administrative proceeding.[10] The record supports the panel's finding that Arabia's violations were negligent. The baseline sanction for Arabia's conduct, before consideration of aggravating and mitigating circumstances, is reprimand. *See Compendium of Professional Responsibility Rules and Standards: Standards for Imposing Lawyer Sanctions*, Standard 6.23 (Am. Bar Ass'n 2017) (explaining that reprimand is appropriate when a lawyer negligently fails to comply with a rule "and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding"). The record supports the two aggravating circumstances (substantial experience in the practice of law and failure to accept the conduct was wrong) and the single mitigating circumstance (lack of prior discipline). Considering all four factors, we conclude the panel's recommended reprimand serves the purpose of attorney discipline. *State Bar of Nev. v. Claiborne*, 104 Nev. 115,

---

[10]We disagree with the dissent's conclusion that interference with an administrative proceeding based on an attorney's own personal interest can cause no harm to the client. While the dissent argues that Nye County's position in other proceedings regarding the termination of Vieta-Kabell could have been hindered by the internal, administrative proceeding, the dissent overlooks the County's interest in ensuring its own internal policies and procedures are followed.

Further, while the dissent disagrees with the imposition of a reprimand because the dissent concludes the County was not harmed, the ABA Standards only require a potential injury to the client to warrant a reprimand. *Compendium of Professional Responsibility Rules and Standards: Standards for Imposing Lawyer Sanctions*, Standard 6.23 (Am. Bar Ass'n 2017).

SUPREME COURT
OF
NEVADA

(O) 1947A

213, 756 P.2d 464, 527-28 (1998) (recognizing that the purpose of attorney discipline is to protect the public, courts, and the legal profession).

*CONCLUSION*

An attorney cannot avoid professional discipline by asserting qualified immunity. Further, even if an attorney is an elected official, the State Bar has authority to investigate and prosecute alleged violations of the Rules of Professional Conduct, and this court, along with the disciplinary boards and hearing panels, has exclusive jurisdiction to discipline an attorney when such violations are proven. Because substantial evidence supports the panel's findings that Arabia violated RPC 1.7 and RPC 8.4(d), we conclude a reprimand is appropriate discipline.

Accordingly, we hereby reprimand attorney Christopher R. Arabia for violating RPC 1.7 (conflict of interest: current clients) and RPC 8.4(d) (misconduct prejudicial to the administration of justice). Additionally, Arabia must pay the costs of the disciplinary proceeding plus $1,500 under SCR 120(1) & (3) within 30 days from the date of this opinion.

_____, J.
Herndon

I concur:

_____, J.
Cadish

SUPREME COURT
OF
NEVADA

(O) 1947A

PICKERING, J., concurring in part and dissenting in part:

I join the court in rejecting both Arabia's qualified immunity claim and his argument that only the Nevada Commission on Ethics can discipline an elected district attorney. I write separately because I disagree that the record supports the professional discipline imposed. It takes clear and convincing evidence to establish a violation of the Nevada Rules of Professional Conduct (RPC), *In re Discipline of Colin*, 135 Nev. 325, 329, 448 P.3d 556, 560 (2019), and "the Rules presuppose that disciplinary assessment of a lawyer's conduct will be made on the basis of the facts and circumstances as they existed at the time of the conduct in question and in recognition of the fact that a lawyer often has to act upon uncertain or incomplete evidence of the situation." RPC 1.0A(c); *see Model Rules of Prof'l Conduct*, Scope, ¶ 19 (Am. Bar Ass'n 2018).[1] Accepting this perspective, I have difficulty concluding that the email Arabia sent the Nye County human resources director on September 24, 2019 violated the RPC. At most, the email amounted to a negligent and isolated violation of RPC 1.7(a) (prohibiting concurrent conflicts of interest) that did not cause the client harm. The strongest sanction appropriate for such a violation is an admonition, not a formal public reprimand.

I.

The events giving rise to the disciplinary charges against Arabia took place over a few days' time. On September 18, 2019, Arabia terminated a Nye County deputy district attorney. Several days later, on September 23, the deputy emailed the Nye County human resources

---

[1]Nevada drew its RPC from the ABA Model Rules of Professional Conduct. Although it did not adopt the preamble and comments to the ABA Model Rules, RPC 1.0A provides that they "may be consulted for guidance in interpreting and applying" the RPC.

director, asking to appeal his termination to the Nye County manager pursuant to an informal review process that the Nye County Code and Personnel Policy Manual established for certain nonexempt county employees. The next morning, the human resources director sent Arabia and the deputy an email setting the review hearing the deputy requested two weeks out, for October 9. The email asked the parties to reply and confirm their availability.

Arabia did not believe that the informal review process applied to the deputy because it would substitute the county manager for the district attorney as the person with the final say over the deputy's termination. Still new to the office, Arabia consulted with two long-term chief deputy district attorneys (both of whom later testified at the State Bar disciplinary hearing). They advised that the review process did not apply to Nye County deputy district attorneys, whose employment was at will and whose hiring and firing NRS 252.070 made the district attorney's prerogative, exclusively.[2] At 4:42 p.m. on September 24, Arabia responded to the human resources director's email of the day before with his own email explaining this position. In his email, which Arabia did not copy the deputy on, he objected to the October 9 hearing and demanded that the human resources director cancel it. About 24 hours later, on September 25 at 3:57 p.m., the human resources director sent emails to both Arabia and the deputy canceling the hearing.

---

[2]One of the two chief deputy district attorneys had worked for the Nye County district attorney's office for 25 years. She could not recall a single instance where the county manager reviewed a deputy district attorney's termination pursuant to the informal hearing process the deputy invoked here.

Supreme Court
of
Nevada

(O) 1947A

The disciplinary panel finds that "[b]etween September 23, 2019 and September 25, 2019, no other attorney, representing Nye County, communicated with the Nye County Human Resources Director regarding the requested appeal hearing." To the extent this finding suggests that the human resources director acted alone and without access to a lawyer in deciding to cancel the hearing, it is clearly erroneous. *See Colin*, 135 Nev. at 330, 448 P.3d at 560 (noting that this court is not bound by findings of fact that are clearly erroneous). The county manager—himself an attorney and a former Nye County deputy district attorney—was copied on all emails, including Arabia's. And the Nye County human resources director testified that she consulted with the Nye County manager before canceling the hearing. Also on September 25 at 11:15 a.m., almost 5 hours before the human resources director canceled the hearing, Nye County's insurer retained outside counsel, Rebecca Bruch, based on the litigation threat the deputy's termination posed.

The record repels the majority's suggestion, *ante* at 17 n.8, that the terminated deputy district attorney had a legal right to the informal hearing. Citing authority, Arabia argued to the disciplinary panel orally and in writing that the deputy was not eligible for this particular type of code- and personnel-manual-based hearing—in other words, that the legal opinion expressed in Arabia's email was correct. State Bar counsel did not dispute this, instead maintaining that, for purposes of deciding attorney discipline, "it did not matter whether Mr. Arabia's opinion was correct or not." Taking the State Bar at its word, it is appropriate to assume that the law did not entitle the deputy to have the county manager review his termination. *Cf. Einhorn v. BAC Home Loans Servicing, LP*, 128 Nev. 689, 693 n.3, 290 P.3d 249, 252 n.3 (2012) ("[a] party may not raise new issues,

factual and legal, [on appeal] that were not presented to the district court") (internal quotation marks omitted).

## II.

An attorney facing professional discipline has a right to procedural due process, which includes fair notice of the charges against him. *In re Ruffalo*, 390 U.S. 544, 550 (1968). The State Bar charged Arabia with violating RPC 1.7 and RPC 8.4. To prevail, the State Bar had to prove by clear and convincing evidence that Arabia committed the violations charged. *In re Discipline of Drakulich*, 111 Nev. 1556, 1556, 908 P.2d 709, 715 (1995). Conduct extraneous to the violations charged cannot make up for the State Bar's failure to prove their elements by clear and convincing evidence.

## A.

The State Bar principally charged Arabia with violating RPC 1.7. This Rule prohibits a lawyer from representing a client if the representation involves a concurrent conflict of interest:

> [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. *A concurrent conflict of interest exists if*:
>
> (1) The representation of one client will be directly adverse to another client; or
>
> (2) *There is a significant risk that the representation of one or more clients will be materially limited* by the lawyer's responsibilities to another client, a former client or a third person or *by a personal interest of the lawyer.*

RPC 1.7(a) (emphases added). This matter does not involve a direct conflict of interest arising from a lawyer's representation of multiple clients. RPC 1.7(a)(1). Instead, it involves a single client—Nye County—and an allegation that the lawyer, Arabia, had a "personal interest" that posed a

"significant risk" of "materially limit[ing]" his representation of that client. RPC 1.7(a)(2).

RPC 1.7(a) distinguishes direct multiple-representation conflicts from those involving self-interest. The reasons for the distinction are clear. "When multiple representation exists, the source and consequences of the ethical problem are straightforward: 'counsel represents two clients with competing interests and is torn between two duties. . . . He must fail one or do nothing and fail both.'" *Beets v. Scott*, 65 F.3d 1258, 1270 (5th Cir. 1995) (quoting *Beets v. Collins*, 986 F.2d 1478, 1492 (5th Cir. 1993) (Higginbotham, J., concurring), *on reh'g en banc*, 65 F.3d 1258 (1995)). "Conflicts between a lawyer's self-interest and his duty of loyalty to the client," by contrast, "fall along a wide spectrum of ethical sensitivity from merely potential danger to outright criminal misdeeds." *Id.*

A "personal interest" potentially creating conflict between the lawyer and his or her client might arise from any number of sources, not all of them consequential. A lawyer's emotive state or subjective "feelings" normally fall outside RPC 1.7(a)(2). *See Sands v. Menard, Inc.*, 787 N.W.2d 384, 405 (Wis. 2010) (Abrahamson, J., dissenting) (4-3) (noting "that the phrase 'personal interest'" in Wisconsin's analogous rule governing professional conduct, SCR 20:1.7(a)(2), "refers not to [the lawyer's] own emotive state or stake, but rather to substantive, material conflicts of interest"). A "serious question" concerning "the probity of a lawyer's own conduct," by contrast, or "discussions concerning possible employment with an opponent of the lawyer's client," "business transactions with clients," or the instances referenced in RPC 1.8 can create a concurrent conflict of interest under RPC 1.7(a), depending on circumstances. *See Model Rules*, r. 1.7 cmt. 10, *discussed in Sands*, 787 N.W.2d at 405. "[T]he virtually

limitless cases in which a 'conflict' may theoretically arise" out of a lawyer's personal interest pose "a very real danger of analyzing these issues not on fact but on speculation and conjecture." *Essex Cty. Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418, 432 (D.N.J. 1998). To guard against this danger, "when a conflict of interest issue arises based on a lawyer's self-interest, a sturdier factual predicate must be evident than when a case concerns multiple representation" of clients whose interests directly conflict. *Id.*

The disciplinary panel concluded, on a split vote, that Arabia violated RPC 1.7 "when he opined to the Nye County Human Resources Director that the requested appeal hearing was improper and demanded that the hearing be vacated within 48 hours of his demand, without recognizing the substantial risk that his personal interest in defending against the appeal could materially limit his ability to fulfill his responsibilities to his client, Nye County." The majority opinion adds that Arabia had a personal interest in having the hearing vacated quickly because the county would soon hire outside counsel and "Arabia did not want to be forced to rehire" the deputy. Maj. op., *ante* at 14. It also suggests that Arabia wanted to cancel the hearing to protect his professional reputation, since a hearing would reveal that Arabia had fired the deputy for attempting to unionize the Nye County district attorney's office.

These reasons have too much of speculation and conjecture in them to establish the "sturd[y] factual predicate" needed to find a disabling conflict of interest. *Treffinger*, 18 F. Supp. 2d at 432. Canceling the informal hearing would not make the deputy and his wrongful termination claims go away—and nothing in the record suggests that Arabia irrationally thought it would. By the time Arabia sent his email, the deputy had hired

a lawyer. Arabia knew this because the deputy referenced his lawyer in his response to the human resources director's email setting the hearing date, on which he copied Arabia. Nye County's retention of insurance defense counsel followed as a matter of course, before the human resources director emailed to cancel the hearing. And, as Arabia knew, the deputy had options besides the review by the county manager, including a "245" hearing (apparently referring to NRS 245.065) and filing a lawsuit in court. Unlike the review process, which is informal, both are forms of public hearing. As such, they carried a greater risk to Arabia of public criticism than the canceled review hearing did. The court cites Arabia's reference to "tak[ing] the hit," Maj. op., *ante* at 14, for the termination decision as evidence of his disabling personal interest, but that statement did not refer to the informal review hearing. It came in the context of Arabia's testimony about the 245 hearing the deputy separately sought—a hearing Arabia supported but that the deputy later decided not to pursue. Arabia's support of the 245 hearing, his brassy statement that he welcomed a 245 hearing because it would let him publicly explain his reasons for the termination, and his willingness to "take the hit" if the 245 hearing panel disagreed with him do not square with the fear of public criticism on which the court grounds its conflict analysis. And the possibility the informal review would require Arabia to reinstate the deputy seems remote, especially if it was not something the deputy had a legal right to pursue in the first place.

A lawyer's personal interest does not create a disabling conflict of interest requiring client disclosure and consent or withdrawal unless it carries a significant risk of materially and adversely affecting the client. *See Model Rules*, r. 1.7 cmt. 10 (noting that under Rule 1.7(a)(2), "[t]he lawyer's own interests should not be permitted to have an adverse effect on

representation of a client"); Restatement (Third) of the Law Governing Lawyers § 121 (Am. Law Inst. 2000) (providing that for a prohibited conflict of interest to arise, there must be "a substantial risk that the lawyer's representation of the client would be materially and adversely affected by the lawyer's own interests"). "Unless there is risk that the lawyer's representation would be affected 'adversely,'" in other words, "there is no conflict of interest." Restatement (Third) of the Law Governing Lawyers § 121 cmt. c(i). Here, the State Bar does not explain how canceling the informal hearing materially and adversely affected Nye County (or carried a "significant risk" of doing so). In fact, the opposite appears true. Proceeding with the informal hearing would have buttressed the deputy's position that he could not be terminated except for good cause; this would hurt the county's probable litigation position that his employment was at will. The State Bar's effective concession that review by the county manager was not something the deputy was entitled to as a right further confirms that Arabia's email demanding that the human resources director cancel the hearing did not cause the county legal harm.

Arabia had both executive and legal responsibilities to Nye County. Although he testified that he believed he was acting in his executive and not his legal capacity in sending the email, the disciplinary panel and the majority disagree. *But see Model Rules of Prof'l Conduct*, Scope, ¶ 18 (noting that "[u]nder various legal provisions, including constitutional, statutory and common law, the responsibilities of government lawyers may include authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships" and providing that "[t]hese [r]ules do not abrogate any such authority"); *id.* at 1.13 cmt. 9 (addressing the difficulties inherent in a lawyer representing a

governmental entity and noting that "[d]efining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context and is a matter beyond the scope of these Rules"). Ideally, the matter of who had authority over the termination would not have arisen on such short notice, allowing for clarification without confrontation. *See id.* at 1.7 cmt. 35 (discussing the challenges and need for occasional clarification when a lawyer serves an entity as both a business and a legal adviser). But with the hearing requested one day and set the next, to occur just two weeks out, time did not permit a measured discussion, making reasonable Arabia's decision to consult with two experienced deputies and insist on the hearing's cancellation as legally unfounded. *See id.* at 1.10(a)(1) (providing that a concurrent conflict of interest that is based on a lawyer's personal interest under Model Rule 1.7(a)(2) is not imputed to other lawyers who practice with that lawyer unless their representation, too, presents "a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm").

Our review of the disciplinary panel's findings of fact is deferential, "so long as they are not clearly erroneous and are supported by substantial evidence." *Colin*, 135 Nev. at 330, 448 P.3d at 560. And "we determine de novo whether the factual findings establish an RPC violation." *Id.* Here, the panel's findings of a disabling personal interest causing harm to Arabia's representation of Nye County are clearly erroneous and do not support holding that Arabia's email violated RPC 1.7(a)(2).

B

The State Bar also charged Arabia with violating RPC 8.4(d) based on the same September 24 email. RPC 8.4(d) provides that "[i]t is professional misconduct for a lawyer to . . . [e]ngage in conduct that is

SUPREME COURT
OF
NEVADA

(0) 1947A

prejudicial to the administration of justice." "For purposes of this [R]ule [8.4(d)], 'prejudice' requires 'either repeated conduct causing some harm to the administration of justice or a single act causing substantial harm to the administration of justice.'" *Colin*, 135 Nev. at 332, 448 P.3d at 562 (quoting *In re Discipline of Stuhff*, 108 Nev. 629, 634, 837 P.2d 853, 855 (1992)). The facts in this case do not rise to the level required to establish "prejudice" under *Colin*. It proceeds from a "single act"—Arabia sending the September 24 email to Nye County's human resources director without copying the deputy—and that act did not cause "substantial harm to the administration of justice." *Id.* The deputy promptly learned of Arabia's communication, and the hearing was properly canceled for the reasons already discussed. Accordingly, the RPC 8.4(d) charge is a legal nonstarter and should be dismissed.

### C.

Arabia has had no prior attorney discipline, and the panel found that his conduct in sending the email was negligent, not intentional. Furthermore, the hearing's cancellation caused Nye County little or no actual or potential harm. Under these circumstances, even accepting for purposes of argument that Arabia's email violated RPC 1.7(a)(2), the sanction of a formal public reprimand is unwarranted. At most, the email warranted an admonition. *See Compendium of Professional Responsibility Rules and Standards: Standards for Imposing Lawyer Sanctions*, Standard 4.34 (Am. Bar Ass'n 2017) ("Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the

lawyer's own interests . . . and causes little or no actual or potential injury to a client.").

While I join the parts of the opinion rejecting qualified immunity and the claim of exclusive jurisdiction of the Nevada Commission on Ethics, I otherwise respectfully dissent.

_____ *Pickering* _____ , J.
Pickering