**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ANTHONY J. KASSAS,
*Plaintiff-Appellant*,

v.

STATE BAR OF CALIFORNIA,
*Defendant-Appellee.*

No. 21-55900

D.C. Nos.
2:19-bk-24457-ER
2:21-ap-01021-ER

OPINION

Appeal from the United States Bankruptcy Court
for the Central District of California
Ernest M. Robles, Bankruptcy Judge, Presiding

Argued and Submitted April 12, 2022
San Francisco, California

Filed August 1, 2022

Before: Jay S. Bybee and Ryan D. Nelson, Circuit Judges,
and Jed S. Rakoff,* District Judge.

Opinion by Judge Bybee

---

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

# SUMMARY[**]

## Bankruptcy

The panel affirmed in part and reversed in part the bankruptcy court's judgment in an adversary proceeding in which the bankruptcy court found nondischargeable (1) indebtedness arising from a disbarred attorney's obligation to reimburse the State Bar for payments made by the Bar's Client Security Fund to victims of his misconduct and (2) the costs for the disciplinary proceedings conducted against the attorney, a Chapter 7 debtor.

Reversing in part, the panel held that the indebtedness arising from the attorney's obligation to reimburse the State Bar for the payments made to victims of his misconduct was not excepted from discharge under 11 U.S.C. § 523(a)(7), which provides that a debtor is not discharged from any debt that "is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." Considering the totality of the Client Security Fund program, the panel concluded that any reimbursement to the Fund was payable to and for the benefit of the State Bar and was compensation for the Fund's actual pecuniary loss in compensating the victims for their actual pecuniary losses.

Affirming in part, the panel held that, pursuant to *In re Findley*, 593 F.3d 1048 (9th Cir. 2010), the costs associated

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

with the attorney's disciplinary proceedings were nondischargeable under § 523(a)(7).

---

**COUNSEL**

Matthew D. Resnik (argued) and M. Jonathan Hayes, Resnik Hayes Moradi LLP, Encino, California, for Plaintiff-Appellant.

Suzanne C. Grandt (argued), Vanessa L. Holton, and Robert G. Retana, Office of General Counsel, State Bar of California, San Francisco, California, for Defendant-Appellee.

---

**OPINION**

BYBEE, Circuit Judge:

Appellant Anthony J. Kassas, a Chapter 7 debtor, was disbarred by the California Supreme Court in 2014 for violations of the State Bar Rules of Professional Conduct and the California Business and Professions Code. The California Supreme Court ordered Kassas to pay restitution to 56 former clients, costs for his disciplinary proceedings, and any funds that would eventually be paid out by the State Bar's Client Security Fund (CSF) to victims of his conduct. Kassas subsequently filed for Chapter 7 bankruptcy and received a discharge.

Kassas sought a declaration that all of his debts to the State Bar were discharged in the bankruptcy. The State Bar argued that Kassas's disciplinary costs and reimbursements

to the CSF were excepted from discharge pursuant to 11 U.S.C. § 523(a)(7) as "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and . . . not compensation for actual pecuniary loss." The bankruptcy court granted summary judgment for the State Bar. *In re Kassas*, 631 B.R. 469 (Bankr. C.D. Cal. 2021). The court concluded that while the restitution payments were discharged, the disciplinary costs and reimbursements paid from the CSF were not. Finding that the dischargeability of reimbursements from the CSF is a matter of public importance, the bankruptcy court certified the following question to us: "Is indebtedness arising from a disbarred attorney's obligation to reimburse the State Bar for payments made by the CSF to victims of that attorney's misconduct while practicing law non-dischargeable under 11 U.S.C. § 523(a)(7)?" *In re Kassas*, 2021 WL 2446270, at *2 (Bankr. C.D. Cal. June 15, 2021). We answer that such indebtedness is dischargeable, and we reverse the judgment in part.

## I. BACKGROUND AND PROCEEDINGS

A. *Background*

### 1. The Statutory Framework

In 1971, the California Assembly created a CSF "to relieve or mitigate pecuniary losses caused by the dishonest conduct of licensees of the State Bar . . . arising from or connected with the practice of law." Cal. Bus. & Prof. Code § 6140.5(a) (West 2011). Under the California State Bar's CSF Rules, "[t]o qualify for reimbursement, an applicant must establish a loss of money or property that was received by an active attorney who was acting as an attorney or in a fiduciary capacity customary to the practice of law." Cal.

State Bar Rule 3.430(A).  "The loss must have been caused by dishonest conduct" and the attorney must have "been disbarred, disciplined, or voluntarily resigned from the State Bar; died or been adjudicated mentally incompetent; or . . . become a judgment debtor of the applicant in a contested proceeding or been convicted of a crime."  *Id.* at 3.430(B), (C), 3.432(A).  Decisions "to deny or limit reimbursement" are ultimately made by the CSF Commission, a five-member body.  *Id.* at 3.421(A), 3.430(D).

When an application is received, the CSF Commission can investigate the application "as it deems appropriate," including requiring the submission of declarations, holding evidentiary hearings, and compelling witnesses and documents by subpoena.  *Id.* at 3.441(A), (C).  The Commission's decision to reimburse an applicant "must be based on a preponderance of the evidence."  *Id.* at 3.441(I).  The maximum reimbursement allowed per applicant is $100,000.  *Id.* at 3.434(A).

The CSF Commission must serve a Notice of Intention to Pay on the attorney responsible for the conduct in an application.  *Id.* at 3.442(C), 3.445(A).  The attorney has thirty days to submit an objection.  *Id.* at 3.442(D).  If an objection is received, the Commission will conduct further review, and if no objection is received, the CSF may pay the applicant.  *Id.*  The CSF Commission must also serve a notice of its Tentative Decision, which includes a statement of the findings or reasons on which the decision is based, to the attorney and applicant, who have thirty days to lodge a written objection.  *Id.* at 3.443(A), (B), 3.445(B).  Only after the parties have an opportunity to submit objections, requests, or declarations in response to the Tentative Decision can the CSF Commission issue a Final Decision.  *Id.* at 3.444(A).  An

attorney or applicant can petition for review of the CSF's Final Decision in California Superior Court.  Cal. State Bar Rule 3.450; *see also State Bar of Cal. v. Statile*, 86 Cal. Rptr. 3d 72, 81 (Ct. App. 2008).

Pursuant to the statute creating the CSF, once the CSF makes a payment, "the State Bar is subrogated, to the extent of that payment, to the rights of the applicant against any person or persons who . . . caused the pecuniary loss."  Cal. Bus. & Prof. Code § 6140.5(b).  The statute further provides that

> [a]ny attorney whose actions have caused the payment of funds to a claimant from the Client Security Fund shall reimburse the fund for all moneys paid out as a result of his or her conduct with interest, in addition to payment of the assessment for the procedural costs of processing the claim, as a condition of continued practice.

*Id.* § 6140.5(c).[1]   For an attorney who is disbarred "the reimbursed amount, plus applicable interest and costs, shall be paid as a condition of reinstatement of membership."  *Id.*  And "[a]ny assessment against an attorney . . . that is part of an order imposing a public reproval on a member or is part of an order imposing discipline or accepting a resignation with a disciplinary matter pending, may also be enforced as a money judgment."  *Id.* § 6140.5(d).

---

[1] The cited version was in effect from January 2, 2012, until December 31, 2018, the time period covering Kassas's disciplinary proceedings. All subsequent citations are to this version of the statute.

2.   The Facts

Kassas committed numerous violations of the State Bar Rules of Professional Conduct and California's Business and Professions Code.  In January 2014, the California Supreme Court disbarred Kassas.  As part of its disciplinary order, the Supreme Court ordered Kassas to make restitution payments to 56 individuals for a total of $201,706, plus ten percent interest per year.  The California Supreme Court also awarded costs to the State Bar for the disciplinary proceedings in the amount of $61,122.27.  Finally, the California Supreme Court also specified that "[a]ny restitution owed [by Kassas] to the Client Security Fund is enforceable as provided in Business and Professions Code section 6140.5, subdivisions (c) and (d)."

The CSF made 51 payments to individuals named as restitution recipients in the CSC's order and 305 payments to individuals not named in the order.[2]  In total, the CSF paid $1,367,978.12 to Kassas's victims.   The typical victim received between $3,000 and $6,000.  As of April 2021, including interest and processing costs, Kassas owes the CSF $2,090,096.32.

---

[2] The California Supreme Court named 56 victims in Kassas's disbarrment order.  The State concedes that the restitution owed directly to these individuals is dischargeable.  Kassas did not reimburse those former clients, and 51 of the 56 filed for compensation from the CSF.  *See In re Kassas*, 631 B.R. at 470.  The amount Kassas owed to 51 of those individuals is subsumed within the money paid to the 356 claimants.  The State's restitution order remained binding until the debt was discharged.  Discharge voids the restitution order and prevents a double recovery by the 51 individuals who obtained reimbursement through the CSF.

B.  *The Proceedings Below*

In December 2019, Kassas filed for Chapter 7 bankruptcy. He received a discharge in March 2020.  In January 2021, Kassas filed an adversary proceeding in bankruptcy court seeking a declaration that all debts listed in his complaint were discharged in the bankruptcy.  The State Bar moved to dismiss the complaint, but the bankruptcy judge converted the motion into a motion for summary judgment and ordered supplemental briefing.

In a published order, the bankruptcy court held that some debts associated with his disciplinary proceedings were dischargeable, while others were not.  Three separate debts were the subject of the bankruptcy court's order.  631 B.R. 469.  First, the bankruptcy court held that the restitution the California Supreme Court ordered Kassas to pay 56 former clients—totaling $201,706 plus interest—was discharged as debt.  *Id.* at 471.  The bankruptcy court reasoned that the restitution payments were not a debt "payable to and for the benefit of a government unit," and thus did not come within § 523(a)(7).  *Id.* at 472.  The State Bar did not dispute this ruling.  *Id.* at 471 & n.5; *see supra* n.2.  Second, the court held that the $61,112 in disciplinary costs was not discharged under our decision in *In re Findley*, 593 F.3d 1048, 1054 (9th Cir. 2010).  631 B.R. at 471.  Kassas acknowledged that the bankruptcy court's judgment on those costs was proper under *Findley*, although he preserved his option to challenge *Findley* in en banc proceedings.  *Id.* at 471 & n.6.  Third, the bankruptcy court determined that Kassas's debts owed to the State Bar for restitution to persons not named in the Supreme Court's order—more than $2 million—were nondischargeable under 11 U.S.C. § 523(a)(7).  The court reasoned that the latter  payments to the CSF are "a penalty

imposed in furtherance of the State's interest in punishing and rehabilitating errant attorneys, rather than compensation for actual pecuniary loss." *Id.* at 474. At the same time, the bankruptcy court recognized that the "[t]he Ninth Circuit has not determined whether debt owed to the Client Security Fund is nondischargeable under § 523(a)(7)." *Id.* at 472 (citing *In re Albert-Sheridan*, 960 F.3d 1188, 1194 n.5 (9th Cir. 2020) (stating that the issue of the dischargeability of reimbursements to the CSF was not before the court)). But the court determined that the primary purpose of making attorneys reimburse the CSF is rehabilitative not compensatory. *Id.* at 474. The bankruptcy court certified a direct appeal to this court, pursuant to 28 U.S.C. § 158(d)(2)(A), because the judgment "involves a matter of public importance" and "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit." *In re Kassas*, 2021 WL 2446270, at *2 (Bankr. C.D. Cal. June 15, 2021) (quoting 28 U.S.C. § 158(d)(2)(A)(i)). We granted permission to appeal pursuant to § 158(a).

## II.  STANDARD OF REVIEW

We review de novo the bankruptcy court's decision regarding dischargeability of a debt. *See In re Scheer*, 819 F.3d 1206, 1209 (9th Cir. 2016). "Because a fundamental policy of the Bankruptcy Code is to afford debtors a fresh start, 'exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor.'" *Id.* (quoting *In re Riso*, 978 F.2d 1151, 1154 (9th Cir. 1992)).

### III.  ANALYSIS

We have two issues before us.  The first issue is the question certified by the bankruptcy court regarding the dischargeability of reimbursement owed the CSF for payments to Kassas's former clients.  The second issue relates to the dischargeability of the costs of the proceedings, which we held nondischargeable in *In re Findley*, 593 F.3d at 1054.

A. *Payments From the CSF Are Dischargeable Under § 523(a)(7)*

A discharge in bankruptcy under Chapter 7 releases the debtor from personal liability for pre-bankruptcy debts. Section § 523 of Title 11 exempts certain debts from discharge.  In this case, the State Bar claims that Kassas's obligation to reimburse the CSF is exempt from discharge under § 523(a)(7).  That section provides:

> an individual debtor [is not discharged] from any debt—
>
> to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . .

11 U.S.C. § 523(a)(7).  We have understood § 523(a)(7) to encompass three separate elements, each of which must be satisfied before a debt is nondischargeable.  That is, the nondischargeable debt "must (1) be a fine, penalty, or forfeiture; (2) be payable to and for the benefit of a governmental unit; and (3) not constitute compensation for

actual pecuniary costs." *In re Albert-Sheridan*, 960 F.3d at 1193; *see also Kelly v. Robinson*, 479 U.S. 36, 51 (1986).

Only two of the three elements are in play here. Neither party disputes that the State Bar is a governmental entity. *See* Cal. Const. art. VI, § 9 ("The State Bar of California is a public corporation."); *see also Keller v. State Bar of Calif.*, 496 U.S. 1, 11–13 (1990); *Hirsh v. Justices of the Sup. Ct.*, 67 F.3d 708, 715 (9th Cir. 1995). Thus, we need only determine whether reimbursement to the CSF is "a fine, penalty, or forfeiture" and not "compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7). The question of when restitution may be considered a fine or penalty has been a difficult question. *See Kelly*, 479 U.S. at 52 (holding "a criminal judgment that takes the form of restitution" is within "the penal goals of the State" and is nondischargeable).

We have had our own back-and-forth over the nature of costs imposed in attorney disciplinary matters. In *In re Taggart*, 249 F.3d 987 (9th Cir. 2001), we held that the costs of attorney disciplinary proceedings in California were "not penal in nature." *Id.* at 994. In response to *Taggart*, California amended the statute requiring the payment of such costs and specified that such costs are "penalties . . . to promote rehabilitation and to protect the public." Cal. Bus. & Prof. Code § 6086.10(e). In *In re Findley*, we revisited the question of disciplinary costs. 593 F.3d 1048 (9th Cir. 2010). We concluded that the amendment made clear that California "enacted attorney disciplinary costs to serve penal and rehabilitative ends [and] thus undermines the result in *Taggart*." *Id.* at 1054. After *Findley*, such costs are nondischargeable in bankruptcy. *See also In re Scheer*, 819 F.3d at 1211(holding that the State Bar's attempt to enforce an arbitration award in favor of Scheer's former

client was "not a fine or penalty" but "purely compensatory" and not subject to § 523(a)(7)).

We do not need to reach the question whether the California Supreme Court's order that Kassas repay the CSF is a fine or penalty, because we conclude that the restitution payments at issue here are "compensation for actual pecuniary loss." *In re Albert-Sheridan*, 960 F.3d at 1193 n.3 ("Because the discovery sanctions do not meet the governmental unit or non-compensatory elements, we need not address whether they are also fines, penalties, or forfeitures under the Code."). As we discuss below, at every step of the CSF process, the State Bar is focused on compensating victims for their actual pecuniary losses or seeking compensation for the CSF's actual payments.

First, the stated purpose of the CSF is "to relieve or mitigate *pecuniary losses* caused by the dishonest conduct of active members of the State Bar." Cal. Bus. & Prof. Code § 6140.5(a) (emphasis added). The CSF has all the hallmarks of a secondary, public insurance program overseen by an administrative agency. *See* State Bar Rule 3.434(B)(2) (excluding reimbursement for "a loss covered by any indemnity, such as insurance, fidelity guarantee, or bond"). The State Bar's rules limit reimbursement to "loss of money or property that was received by an active attorney" and excludes other damages, including interest and consequential losses. *Id.* at 3.430(A), 3.434(B). The amount of pecuniary loss is determined after a deliberative process overseen by the CSF Commission. *Id.* at 3.421(A). Upon application by a putative victim, the Commission makes an initial determination, called a Notice of Intention to Pay. *Id.* at 3.442(A). The attorney must be served with the Notice and given an opportunity to contest the claim, including at an oral

hearing.  *Id.* at 3.442(D), 3.443(B). Counsel to the CSF issues a tentative decision, which may be appealed to the CSF Commission.  Any final decision of the Commission must be in writing.  *Id.* at 3.444(B)(1).  That decision may be appealed to California Superior Court.  *Id.* at 3.450.

Second, once the CSF has made payment to a victim, the attorney's obligation is to "*reimburse* the fund for all moneys paid out."  Cal. Bus. & Prof. Code § 6140.5(c) (emphasis added).  That obligation distinguishes these payments from fines and penalties because they are reimbursement for victims' actual pecuniary loss.  Although fines and penalties such as restitution to crime victims "may be calculated by reference to the amount of harm the offender has caused," *Kelly*, 479 U.S. at 52, criminal restitution does not necessarily demand the precision imposed by California's CSF scheme. As the Supreme Court in *Kelly* observed, some states "do[] not require imposition of restitution in the amount of the harm caused.  Instead [they may] provide[] for a flexible remedy tailored to the defendant's situation."  *Id.* at 53.  The CSF, by contrast, requires attorneys to reimburse the CSF only for the amount the CSF paid the attorney's clients, an amount limited to actual "pecuniary loss."  Cal. Bus. & Prof. Code § 6140.5(b).  That makes the reimbursements—whether by the CSF to the client, or by the attorney to the CSF—more in the nature of the arbitration fee award at issue in *In re Scheer*—an award we described as "purely compensatory." *In re Scheer*, 819 F.3d at 1211.

Finally, reinforcing the idea that the CSF is a form of public insurance, the statute enforces the State Bar's right to reimbursement by granting the State Bar a right of "subrogat[ion], to the extent of that payment, to the rights of the applicant."   Cal. Bus. & Prof. Code § 6140.5(b).

Subrogation is "the substitution of another person in place of the creditor or claimant to whose rights he or she succeeds in relation to the debt or claim." *Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 77 Cal. Rptr. 2d 296, 302 (Ct. App. 1998). "In the insurance context, subrogation takes the form of an insurer's right to be put in the position of the insured for loss that the insurer has both insured and paid." *State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A.*, 49 Cal. Rptr. 3d 785, 790 (Ct. App. 2006). Thus, when an insurance company is subrogated to the rights of its insured, it "step[s] into the shoes of the insured and assert[s] the insured's rights against the third party." *Progressive West Ins. Co. v. Sup. Ct.*, 37 Cal. Rptr. 3d 434, 441 (Ct. App. 2006). The insurer "cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have." *Transcon. Ins. Co. v. Ins. Co. of Penn.*, 56 Cal. Rptr. 3d 491, 498 (Ct. App. 2007) (internal quotation marks and citations omitted). Although there are some technical differences between subrogation and reimbursement, where the statute creating the CSF uses both terms, we must conclude that "both the subrogation rights and reimbursement rights . . . fall within the rubric of subrogation." *21st Cent. Ins. Co. v. Sup. Ct.*, 213 P.3d 972, 976 n.3 (Cal. 2009). Accordingly, the CSF is limited—both by its organic statute and by long-standing principles of subrogation—to recovering the "actual pecuniary costs," 11 U.S.C. § 523(a)(7), of the "pecuniary losses caused by the dishonest conduct of licensees of the State Bar," Cal. Bus. & Prof. Code § 6140.5(a).

Considering the totality of the CSF program, even if reimbursement serves some penal or rehabilitative purpose, we conclude that any reimbursement to the CSF is payable to and for the benefit of the State bar and is compensation for

the CSF's actual pecuniary loss. There is a certain symmetry in our conclusion. The State Bar did not object to the bankruptcy court's conclusion that the reimbursement Kassas owed 56 of his former clients was subject to discharge. *In re Kassas*, 631 B.R. at 470–71. The State Bar only objected to discharge of Kassas's debt to the CSF, which reimbursed an additional 305 of Kassas's clients. *Id.* Our conclusion means that any debt that Kassas owes his clients and is obligated to pay either (1) directly to them or (2) to the CSF because the CSF has made payments to his clients is subject to discharge in bankruptcy. In other words, the dischargeability of Kassas's debt does not turn on whether the CSF decides to step in to compensate his former clients and then seek subrogation against him. Were we to conclude otherwise, Kassas could obtain a discharge for debts he owed directly to 56 of his clients but not for debts owed to the 305 of his clients compensated by the CSF.

We in no way disparage the laudable and important service performed by the CSF. Our decision does not relieve Kassas of his failings as a member of the California Bar. *See In re Scheer*, 819 F.3d at 1212. Our conclusion is controlled by § 523(a)(7).

In sum, we answer the question certified by the bankruptcy court: Indebtedness arising from a disbarred attorneys' obligation to reimburse the State Bar for payments made by the CSF to victims of that attorney's misconduct are not excluded from discharge under § 523(a)(7). The judgment of the bankruptcy court will be reversed on this issue.

B.  *Disciplinary Costs Are Dischargeable Under § 523(a)(7)*

Kassas also appeals the bankruptcy court's judgment holding the costs associated with his disciplinary proceedings nondischargeable.  Kassas acknowledges that the bankruptcy court was bound by our decision in *In re Findley*.  We are also bound by that decision.  A panel can only depart from our own precedent "if a subsequent Supreme Court opinion 'undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.'"  *In re Nichols*, 10 F.4th 956, 961 (9th Cir. 2021) (alteration in original) (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)).  No such intervening precedent or change to the statute exists here.  Thus, we have no occasion to reconsider *In re Findley*.  *See In re Albert-Sheridan*, 960 F.3d at 1192 (refusing to reconsider *In re Findley* in holding that debt to the State Bar for the costs of attorney discipline proceedings is nondischargeable).  As a result, in accordance with the clear directive of *In re Findley*, we affirm the bankruptcy court's finding that Kassas's disciplinary costs of $61,122.27 were not discharged in his bankruptcy.  *See* 593 F.3d at 1054.  If Kassas wishes to pursue this issue, he must do so through a petition for rehearing en banc.

## IV.  CONCLUSION

We reverse the bankruptcy court's judgment that an obligation to reimburse the State Bar for payments by the CSF is nondischargeable under 11 U.S.C. § 523(a)(7).  We affirm the bankruptcy court's judgment,  holding that Kassas's disciplinary costs were not discharged.

**AFFIRMED IN PART, REVERSED IN PART.**