**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: TERRY L. WIKE, | No. 24-4402 |
| *Debtor*. | BAP No. NV-23-1179-LCP |
| STATE BAR OF NEVADA, | |
| *Appellant*, | OPINION |
| v. | |
| TERRY L. WIKE, | |
| *Appellee*. | |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
William J. Lafferty, Frederick P. Corbit, and
Teresa H. Pearson, Bankruptcy Judges, Presiding

Argued and Submitted May 13, 2025
San Francisco, California

Filed July 31, 2025

Before:  M. Margaret McKeown and Ana de Alba, Circuit Judges, and Richard D. Bennett, Senior District Judge.*

Opinion by Judge McKeown

---

**SUMMARY****

---

**Bankruptcy**

The panel affirmed a decision of the Bankruptcy Appellate Panel reversing the bankruptcy court's denial of chapter 7 debtor Terry Wike's motion for sanctions against the State Bar of Nevada in a case in which Wike, a Nevada attorney, sought to discharge a debt he owed to the State Bar for costs and fees assessed when he was twice suspended from practicing law in Nevada.

After the bankruptcy was completed, Wike petitioned for reinstatement of his license.  The State Bar claimed that Wike's debt had not been discharged, and conditioned his full reinstatement on repayment of the costs and fees stemming from his prior suspensions.  The bankruptcy court agreed with the Bar's position and denied Wike's motion for sanctions.

The panel considered whether that debt was exempt from discharge, as urged by the State Bar, because it was "for a fine, penalty, or forfeiture payable to and for the benefit of a

---

* The Honorable Richard D. Bennett, United States Senior District Judge for the District of Maryland, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

governmental unit, and [wa]s not compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7).

The panel concluded that the debt was not exempt from discharge because the money Wike owed to the State Bar was for compensation allocable to the cost of his attorney discipline hearings and not for a fine or penalty. Because the parties agreed that the disposition of Wike's sanctions motion turns solely on dischargeability under § 523(a)(7), the panel remanded for the bankruptcy court to grant the motion.

## COUNSEL

Daniel M. Hooge (argued), State Bar of Nevada, Las Vegas, Nevada, for Appellant.

Terry L. Wike (argued), Pro Se, Law Offices of Terry L. Wike, Las Vegas, Nevada, for Appellee.

## OPINION

McKeown, Circuit Judge:

A discharge in bankruptcy is often described as a financial fresh start. Seeking his own fresh start, Terry Wike, a Nevada attorney, filed for chapter 7 bankruptcy to discharge his debts, including a debt he owed to the State Bar of Nevada for costs and fees assessed when he was twice

suspended from practicing law in Nevada. After the bankruptcy was completed, Wike petitioned for reinstatement of his license. Although the State Bar provisionally reinstated Wike, it claimed that his debt had not been discharged and conditioned his full reinstatement on repayment of the costs and fees stemming from his prior suspensions.

The question we consider is whether that debt was exempt from discharge, as urged by the State Bar, because it was "for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and [wa]s not compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7). Frustrated by the Bar's position, Wike filed a motion for sanctions in the bankruptcy court. The bankruptcy court agreed with the Bar's position and denied the motion. The Bankruptcy Appellate Panel ("BAP"), however, reversed the bankruptcy court and held that the debt was not exempt from discharge.

We affirm the BAP and conclude that the debt was not exempt from discharge because the money Wike owed to the State Bar was for compensation allocable to the cost of his attorney discipline hearings and not for a fine or penalty. Because the parties agree that the disposition of Wike's sanctions motion turns solely on dischargeability under § 523(a)(7), we remand for the bankruptcy court to grant Wike's motion against the State Bar.

## FACTUAL BACKGROUND

### I.   Wike's Suspension from the State Bar of Nevada and Provisional Reinstatement

In 2018 and 2019, the Nevada State Bar initiated two separate disciplinary proceedings before the Southern Nevada Disciplinary Board against Wike for allegedly

mishandling client funds in violation of the Nevada Rules of Professional Conduct. Both matters were automatically reviewed by the Nevada Supreme Court, which has "exclusive disciplinary jurisdiction" over attorneys licensed in Nevada. *In re Discipline of Arabia*, 495 P.3d 1103, 1107 (Nev. 2021) (quoting NEV. SUP. CT. R. 99(1) (2021)); *see* NEV. SUP. CT. R. 76(1); NEV. REV. STAT. § 7.275(1). The Nevada Supreme Court ultimately suspended Wike and ordered him to pay the Nevada State Bar $21,138.15 in fees and costs for his disciplinary proceedings, including $2,500 for each proceeding as "mandated by [Nevada Supreme Court Rule] 120(3)." Wike was suspended until April 9, 2021.

On April 19, 2021, Wike filed a chapter 7 petition for bankruptcy in the United States Bankruptcy Court for the District of Nevada. In his petition, Wike listed a $25,000 debt to the "State Bar of Nevada" as a nonpriority unsecured claim. Although the State Bar was notified of the bankruptcy, it did not participate in the proceedings. On May 20, 2021, Wike's debts were nominally discharged under 11 U.S.C. § 727.

While his bankruptcy petition was pending, Wike petitioned for reinstatement to the State Bar. The Southern Nevada Disciplinary Board concluded that Wike should be reinstated on the condition that he pay back the costs and fees previously imposed by the Nevada Supreme Court. Reviewing the Board's recommendation, the Nevada Supreme Court on February 24, 2022 agreed that Wike should be provisionally reinstated. In so concluding, the court addressed Wike's argument that "his debt to the State Bar for the cost assessment was discharged in bankruptcy." The court held that it could continue to condition Wike's full reinstatement "on the payment of those costs," "regardless

of whether the cost assessment in the discipline order was discharged in bankruptcy." This was so, the court reasoned, because "[t]he primary purposes of attorney discipline" in Nevada "are to promote an attorney's rehabilitation, deter misconduct, and protect the public." The Nevada Supreme Court thus conditioned Wike's full reinstatement on, among other requirements, paying the $21,138.15 he owed from his earlier proceedings.

## II.    Wike Moves for Sanctions

Over a year after his provisional reinstatement, Wike in April 2023 filed a motion to reopen his chapter 7 bankruptcy proceedings with the Bankruptcy Court of the District of Nevada. After the court granted his motion, Wike filed a motion for sanctions against the State Bar. He claimed a violation of 11 U.S.C. § 525(a), which provides in relevant part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license . . . to . . . a person that is or has been a debtor under this title . . . solely because such . . . debtor . . . has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act."[1] This provision "prevents discrimination against a debtor based on a dischargeable debt." *Albert-Sheridan v. State Bar of Cal.* (*In re Albert-Sheridan*), 960 F.3d 1188, 1196 (9th Cir. 2020).

According to Wike, because the "conditional reinstatement [was] premised" on the incorrect view that the fees and costs he owed were "excepted from discharge under § 523(a)(7)," the State Bar discriminated against him in violation of § 525(a). The Bar responded that the "[c]osts

---

[1] The Supreme Court has held that, under the Constitution, States cannot invoke their sovereign immunity as a defense in bankruptcy proceedings. *See Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 377–78 (2006).

imposed under [Nevada Supreme Court Rule] 120 are part of [a] regulatory scheme" designed "to protect the public and the integrity of the profession" and that, accordingly, such costs are "fines" or "penalties" exempt from discharge under § 523(a)(7). Thus, the Bar asserted, it did not unlawfully discriminate against Wike. *See FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 307 (2003) (explaining that "when the debt in question is one of the disfavored class that is nondischargeable," § 525(a) does not apply, and "[t]he government may take action that is otherwise forbidden" (emphasis omitted)).

The bankruptcy court denied Wike's motion for sanctions, construing our precedents as holding "that an obligation to pay the costs associated with . . . attorney discipline proceedings is excluded from discharge under [§] 523(a)(7)." Though neither party raised the *Rooker-Feldman* doctrine before the bankruptcy court,[2] the court alternatively suggested that the doctrine precluded it from reviewing the Nevada Supreme Court's determination that costs imposed under Rule 120 are dischargeable under § 523(a)(7).

Wike appealed the bankruptcy court's decision to the BAP, which reversed and remanded to the bankruptcy court. As a threshold matter, the BAP rejected the bankruptcy court's comment regarding *Rooker-Feldman*. On the merits, the BAP surveyed our case law under § 523(a)(7) and concluded that the fees and costs assessed against Wike by

---

[2] "The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under *Rooker-Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F.3d 1148, 1154 (9th Cir. 2003).

the Nevada Supreme Court do not fall under § 523(a)(7)'s exception to discharge. Specifically, the BAP relied on three factors: (1) that the Nevada Supreme Court Rules seemingly distinguish between "costs" and "sanctions"; (2) that the costs a disciplined attorney must pay under Nevada Supreme Court Rule 120 must all be "allocable to the proceeding" and thus "bear[] the classic hallmarks of compensation"; and (3) that these costs cannot be construed as "serving a penal purpose," because they are automatically imposed on a disciplined attorney even if he is disbarred, despite the Nevada Supreme Court's instruction that disbarred attorneys are not to face "additional forms of discipline" (citation omitted). The BAP reversed the bankruptcy court's conclusion as to the dischargeability of Wike's debt to the Nevada State Bar and remanded the case to the bankruptcy court to determine whether "other reasons prevent[ed] [Wike] from full reinstatement" such that "denial of reinstatement would not be based '*solely*' on payment of a discharged debt" (emphasis added). It is from that decision that the State Bar appealed.

## ANALYSIS

### I.    Jurisdictional Issues

We first evaluate whether we have appellate jurisdiction over this matter despite the BAP's remand order and whether the *Rooker-Feldman* doctrine precludes us from entertaining this appeal.

#### A. Appellate Jurisdiction

Under 28 U.S.C. § 158(d), the federal courts of appeals "have jurisdiction of appeals from all *final* decisions, judgments, orders, and decrees" entered by a BAP (emphasis added). *See Gugliuzza v. FTC* (*In re Gugliuzza*), 852 F.3d

884, 890–91 (9th Cir. 2017). "[W]hen an appeal is taken from a . . . BAP ruling that remands the case for further proceedings in the bankruptcy court," as is the case here, we consider four factors in deciding whether the appeal is effectively from a final decision, judgment, order, or decree: "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm." *Id.* at 894 (simplified).

Under the *Gugliuzza* factors, the BAP's decision constitutes a final order under § 158(d). In its statement of jurisdiction filed in advance of its opening brief, the State Bar disclaimed the need for any remand as "unnecessary." Although the State Bar stood to benefit from the BAP's remand, it made clear that "[t]he central and only issue for the Court of Appeals to resolve is the dischargeability of the disciplinary costs under § 523(a)(7)." Accordingly, this case presents no risk of piecemeal litigation, and it would be far more efficient for us to resolve all that is left, a pure question of law as to the applicability of § 523(a)(7) to costs assessed under Nevada Supreme Court Rule 120. The Bar's appeal is thus properly before us.

## B. *Rooker-Feldman*

Although, in this appeal, neither Wike nor the State Bar have addressed the applicability of *Rooker-Feldman,* we consider the issue because the "doctrine is jurisdictional." *Canatella v. California*, 304 F.3d 843, 849 (9th Cir. 2002). We review de novo the BAP's application of *Rooker-Feldman*. *See Cogan v. Trabucco*, 114 F.4th 1054, 1060 (9th Cir. 2024). Under the *Rooker-Feldman* doctrine, federal courts "are without jurisdiction to hear direct appeals from

the judgments of state courts" and the "de facto equivalent[s]" of such appeals. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (simplified). We have held, however, "that a state court judgment entered in a case that falls within the federal courts' exclusive jurisdiction is subject to collateral attack in the federal courts, and that the *Rooker-Feldman* doctrine therefore does not bar such suits." *Cogan*, 114 F.4th at 1065 (simplified).

The applicability of § 523(a)(7) to a particular debt is an issue that falls within the "exclusive jurisdiction" of the federal courts, and so this case is not barred by *Rooker-Feldman*. The *Rooker-Feldman* question here is resolved by our en banc decision in *Gruntz v. County of Los Angeles* (*In re Gruntz*), 202 F.3d 1074 (9th Cir. 2000) (en banc). In *Gruntz*, we considered "whether a state court modification of [a] bankruptcy automatic stay binds federal courts" and is therefore unreviewable in federal court under the *Rooker-Feldman* doctrine.[3] *Id.* at 1077–78. The answer, we explained, was "no": "Congress has expressed its intent that bankruptcy matters be handled exclusively in a federal forum," and "actions to 'terminate, annul, or modify' the automatic stay are core bankruptcy proceedings," such that "[a]ny state court modification of the automatic stay would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction to enforce the stay." *Id.* at 1080–82 (quoting 28 U.S.C. § 157(b)(2)(G)). "[T]he *Rooker-Feldman* doctrine," we concluded, "does not render a state court judgment modifying the automatic stay binding on a bankruptcy court"—such judgments may be collaterally

---

[3] The bankruptcy automatic stay is a "self-executing" stay, "effective upon the filing of the bankruptcy petition," that "prevents any collection activity against property of the [bankruptcy] estate." *Burton v. Infinity Cap. Mgmt.*, 862 F.3d 740, 746 (9th Cir. 2017) (simplified).

attacked and "declared void" in the federal courts. *Id.* at 1087.

The same logic applies to a state court judgment ostensibly construing § 523(a)(7) and § 525(a). Congress has instructed that "[c]ore proceedings include . . . determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I); *see Gruntz*, 202 F.3d at 1081 n.5. Therefore, the Nevada Supreme Court's order conditionally reinstating Wike to the Bar is not preclusive under *Rooker-Feldman*, because otherwise it "would constitute an unauthorized infringement upon the bankruptcy court's jurisdiction." *Gruntz*, 202 F.3d at 1082.

## II.    11 U.S.C. § 523(a)(7)'s Exception to Discharge

Under 11 U.S.C. § 523(a)(7), a debt is exempt from discharge "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." The statutory text thus establishes "three separate elements, each of which must be satisfied before a debt is nondischargeable": "the nondischargeable debt must (1) be a fine, penalty, or forfeiture; (2) be payable to and for the benefit of a governmental unit; and (3) not constitute compensation for actual pecuniary [loss]." *Kassas v. State Bar of Cal.*, 49 F.4th 1158, 1163 (9th Cir. 2022) (simplified). Here, neither party disputes that prong (2) has been satisfied, as the Nevada State Bar is clearly a governmental unit. The dispositive question, then, is whether the fees and costs Wike owes to the Nevada State Bar comprise "'a fine, penalty, or forfeiture' *and not* 'compensation for actual pecuniary loss.'" *Id.* at 1164 (emphasis added) (quoting 11 U.S.C.

§ 523(a)(7)).[4]  In addressing this question, which we resolve de novo, it is useful to  summarize our case law applying § 523(a)(7) to payments imposed by the California State Bar as part of attorney discipline, before applying the lessons of those cases to the costs that were imposed on Wike under Nevada law.

### A. Section 523(a)(7) Case Law Concerning Debt Stemming from Attorney Disciplinary Proceedings

At the outset, we note that we have had a consistent flow of cases involving the intersection of bankruptcy discharge and attorney discipline payments in California and that those cases, while instructive, hinge primarily on California statutes and the California State Bar's discipline scheme.

Our first case applying § 523(a)(7) in the context of attorney discipline payments was *State Bar of California v. Taggart* (*In re Taggart*).  In *Taggart*, we considered whether the debts that disciplined attorneys incurred from being "order[ed] . . . to pay the costs of their disciplinary proceedings" under California law were exempt from discharge under § 523(a)(7).  249 F.3d 987, 989–90 (9th Cir.

---

[4]  Prongs (1) and (3) have consistently been evaluated as part of the same inquiry.  *See*, *e.g.*, *State Bar of Cal. v. Findley* (*In re Findley*), 593 F.3d 1048, 1051 (9th Cir. 2010) (similarly framing the inquiry as "whether [a disciplinary cost] constitutes a fine, penalty, or forfeiture or instead provides compensation for actual pecuniary loss"); *State Bar of Cal. v. Taggart* (*In re Taggart*), 249 F.3d 987, 991 (9th Cir. 2001) (similarly framing the inquiry as whether the petitioner's "debt is compensation for the State Bar's expenses rather than a fine or penalty"); *Scheer v. State Bar of Cal.* (*In re Scheer*), 819 F.3d 1206, 1211 (9th Cir. 2016) (similarly framing the inquiry as whether "[a]t its core, the [debt] is not a fine or penalty, but compensation for actual loss").

2001). Such debts, we held, were not exempt from discharge. *Id.* at 991.

In reaching this conclusion, we compared the relevant disciplinary provision, CAL. BUS. & PROF. CODE § 6086.10 (2001), to a separate section also requiring disciplined attorneys to make certain payments, CAL. BUS. & PROF. § 6086.13 (2001). We noted, first, that while "the fees levied under § 6086.10 are denominated 'costs' and are imposed to reimburse the State Bar for 'actual expenses' and 'reasonable costs' associated with disciplinary hearings . . . , fees authorized by § 6086.13 are described as 'monetary sanctions' and are not dependent on any expenditure by the State Bar for their imposition." *Taggart*, 249 F.3d at 992 (citations omitted). We observed, too, that because "§ 6086.10 . . . also entitles exonerated attorneys to reimbursement for the costs of defending themselves," that section is "analogous to a section of the California Civil Procedure Code that provides prevailing parties in civil suits the right to recover . . . the . . . costs of litigation." *Id.* at 992. Finally, we looked to § 6086.13's legislative history, which "makes it clear that the section was enacted in order to create the possibility of fines in the context of attorney disciplinary proceedings, which did not exist under § 6086.10." *Id.* at 993. In sum, the text, structure, and legislative history of the relevant provisions of the California Business and Professions Code "all indicate[d] that costs imposed under § 6086.10 [we]re not 'fines, penalties, or forfeitures,' but rather [we]re compensation to the State Bar for 'actual pecuniary loss.'" *Id.* at 994 (original alterations omitted). Thus, these costs were not exempt from discharge.

Just two years later, in response to *Taggart*, "California amended the California Business and Professions Code in 2003" to add § 6086.10(e). *State Bar of Cal. v. Findley* (*In*

*re Findley*), 593 F.3d 1048, 1050, 1052 (9th Cir. 2010). That amendment was a gamechanger in characterizing disciplinary costs in California. Section 6086.10(e), which remains in effect, provides: "In addition to other monetary sanctions as may be ordered by the Supreme Court pursuant to Section 6086.13, costs imposed pursuant to this section are penalties, payable to and for the benefit of the State Bar of California, a public corporation created pursuant to Article VI of the California Constitution, to promote rehabilitation and to protect the public. This subdivision is declaratory of existing law." CAL. BUS. & PROF. CODE § 6086.10(e).

In *Findley* we had the opportunity to consider "whether the 2003 amendment[] [is] sufficient . . . to conclude that attorney disciplinary costs imposed under § 6086.10 now satisfy the requirements of § 523(a)(7) and are not subject to discharge in bankruptcy." 593 F.3d at 1050. We answered that question "yes," holding that the 2003 "amendment undermines the *Taggart* analysis in several ways." *Id.* at 1052. To begin, we determined that the amendment "clarifies that the California legislature's intent in imposing attorney disciplinary costs was 'to promote rehabilitation and to protect the public,' rather to provide compensation, as we inferred in *Taggart*." *Id.* at 1052–53 (quoting CAL. BUS. & PROF. CODE § 6086.10(e)). We then concluded that the amendment "eliminates the distinction we identified in *Taggart* between the 'costs' imposed through § 6086.10 and the 'sanctions' leveled through § 6086.13, by labeling attorney disciplinary costs as 'penalties' imposed 'in addition to other monetary sanctions.'" *Id.* at 1053 (citation and brackets omitted). The legislative history behind the amendments, we noted, confirmed the California legislature's intent in amending § 6086.10. *See id.*

In *Findley*, we acknowledged that the "amended § 6086.10 d[oes] retain certain structural elements identified in *Taggart* as indicative of a compensatory purpose," namely (1) that § 6086.10 "costs continue to reimburse the State Bar for 'actual expenses' and 'reasonable costs' and depend on state expenditures for their imposition" and (2) that there is "a hardship exemption for § 6086.10 cost awards, but not for § 6086.13 sanctions." 593 F.3d at 1053. But these features, we cautioned, were "identified" by our court in *Taggart* "in order to discern California's legislative intent in enacting the prior version of § 6086.10." *Id.* at 1053–54. Because the California legislature "express[ly] state[d] in the 2003 amendment to § 6086.10(e) that it enacted attorney disciplinary costs to serve penal and rehabilitative ends," the fact that these specific features remained unchanged had less bearing on our ultimate conclusion that, as modified in 2003, § 6086.10 costs are exempt from discharge under § 523(a)(7). *Id.* at 1053–54. We also observed that, in any event, "the disciplinary costs" under California law "apply only to misconduct that merits public reproval, suspension or disbarment," and further stated that such costs "need not vary with the nature of the offense to be non-compensatory in nature." *Id.* at 1054.

Six years after *Findley*, in *Scheer v. State Bar of California* (*In re Scheer*), we took yet another look at the amended § 6086.10 to see whether § 523(a)(7) exempted from discharge an arbitration fee award that a disciplined attorney was required to pay as a condition of the reinstatement of her "right to practice law" in California. 819 F.3d 1206, 1208–09 (9th Cir. 2016). We held that § 523(a)(7) did not exempt this particular debt. Because the debt at issue was simply "an arbitration award for a debt between two private parties, payable to one of them," *id.* at

1209, and because "the debt in this case was purely compensatory," the debt was not a payment "assessed for disciplinary reasons" by the California State Bar, *id.* at 1211. The Bar argued that § 523(a)(7) exempted the debt from discharge on account of its assertedly "strong regulatory interest" in controlling attorney conduct. *Id.* But we rejected that position, because accepting it "would render any attorney-client fee dispute nondischargeable" and "would extend" the § 523(a)(7) exemption "to fee disputes in any closely regulated industry." *Id.*

Building on the jurisprudence of bar assessments, in 2020, in *Albert-Sheridan*, we analyzed a situation similar to that of *Scheer*: whether § 523(a)(7) exempted court-ordered discovery sanctions from discharge because the California State Bar conditioned the petitioner's reinstatement to the Bar on the payment of those sanctions. 960 F.3d 1188, 1190. Despite the Bar's actions, those sanctions were not exempt because California law "does not provide for [discovery] sanctions to be paid to the court or any other governmental entity, but to 'anyone' incurring an expense as a result of discovery abuse." *Id.* at 1193. We also observed that because "the discovery sanctions were commensurate with [the] expenses" incurred by the petitioner's opposing party in the underlying case, the sanctions were "compensatory." *Id.* at 1194.

Finally, in *Kassas*, just three years ago, we considered whether an order by the California Supreme Court for the disbarred petitioner to supply "funds that would eventually be paid out by the State Bar's Client Security Fund (CSF) to victims of his conduct" established a debt exempt from discharge under § 523(a)(7). 49 F.4th 1158, 1160–61. There, we held, the debt was not exempt from discharge. *Id.* We observed that "the stated purpose of the CSF is 'to

relieve or mitigate *pecuniary losses* caused by the dishonest conduct of active members of the State Bar,'" *id.* at 1164 (quoting CAL. BUS. & PROF. CODE § 6140.5(a)), and likewise that "once the CSF has made payment to a victim, the attorney's obligation is to '*reimburse* the fund for all moneys paid out,'" *id.* at 1165 (quoting CAL. BUS. & PROF. CODE § 6140.5(c)). This "obligation," we concluded, "distinguishes these payments from fines and penalties because they are reimbursement for victims' actual pecuniary loss." *Id.*

In each of these cases, we closely scrutinized the relevant California statutes to determine whether the payment imposed on a disciplined attorney constituted "a fine, penalty, or forfeiture" rather than "compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7). Here too, then, we subject the relevant Nevada legal authorities to similar scrutiny, drawing parallels to the factors we have found relevant in our prior cases.

## B. Wike's Debt Is Not Exempt from Discharge

We now turn to the specifics of Wike's debt and the Nevada attorney discipline scheme. Upon reviewing the Nevada Supreme Court's precedents and Nevada Supreme Court Rules 120 and 102, we conclude that Wike's debt for the costs imposed on him under Rule 120 was not exempt from discharge.

To begin with, all of the fees and costs imposed under Nevada Supreme Court Rule 120 must be "allocable to the proceeding." *See* NEV. SUP. CT. R. 120(1), (3). And while Rule 120 sets varying minimum "administrative costs" depending on the sanction imposed on the disciplined attorney, these costs are also deemed to be "allocable to the proceeding." *Id.* 120(3). Nevada law therefore expressly

construes Rule 120's fees and costs as being "commensurate" with the costs of disciplinary proceedings. *See Albert-Sheridan*, 960 F.3d at 1194. On its own, that construction is a very strong indication that Wike's debt is for compensation for actual pecuniary loss. *See Kassas*, 49 F.4th at 1164–66; *Taggart*, 249 F.3d at 992, 994.

As in *Taggart*, the Nevada Supreme Court Rules also contain two separate sections, one concerning the assessment of sanctions and the other related to fees and costs. Nevada Supreme Court Rules 102 and 102.5 permit the imposition of monetary "penalties or sanctions," including restitution, disgorgement, and fines of up to $1,000, except in cases of disbarment. *See* NEV. SUP. CT. R. 102(2), 102.5(4)(l); *see In re Discipline of Reade*, 405 P.3d 105, 106 (Nev. 2016) (referring to a "fine" as among the "sanctions permissible under" Rule 102). These sanctions are discretionary and must be "intended to create protection of the public or increase confidence in the integrity of the [legal] profession." *See* NEV. SUP. CT. R. 102(2); *see id.* 102.5 (setting forth the factors to be considered in imposing sanctions). In contrast, Rule 120 is mandatory and does not describe the assessed payments as sanctions. *See* NEV. SUP. CT. R. 120(1), (3) (stating that disciplined attorneys "*shall* be assessed" costs (emphasis added)). Rather, the payments are "costs" and "fees" that, as noted above, must be "allocable to the proceeding." *Id.* Thus, "[a] comparison of the plain language of these two sections" buttresses the conclusion that fees and costs imposed under Rule 120 do not constitute fines or penalties under § 523(a)(7). *See Taggart*, 249 F.3d at 992–93.

Unlike the pointed California legislation addressed in *Findley*, the Nevada Supreme Court has not sufficiently established that payments under Rule 120 are fines and

penalties that "serve penal and rehabilitative ends." *See Findley*, 593 F.3d at 1054. In its unpublished order provisionally reinstating Wike to the State Bar, the court stated that "the primary purposes of attorney discipline are to promote an attorney's rehabilitation, deter misconduct, and protect the public" and suggested in conclusory fashion that any costs assessed under Rule 120 are fines and penalties consistent with these purposes. But under the Nevada Rules of Appellate Procedure, this unpublished order does "not establish mandatory precedent." *See* NEV. R. APP. P. 36(c)(2). Moreover, the court's unpublished order is in tension with its prior published opinion in *Reade*. In *Reade*, the Nevada Supreme Court held that it did not have authority under Rule 102 "to impose a fine in conjunction with suspension or disbarment," in part because such a fine was inconsistent with the purposes of attorney discipline. 405 P.3d at 108–09. After reaching this conclusion, however, the court still ordered the suspended petitioner to "pay the costs of [his] disciplinary proceedings" pursuant to Rule 120, thereby suggesting that costs imposed under Rule 120 do *not* qualify as fines. *See id.* at 109. Accordingly, the Nevada Supreme Court's caselaw is a wash as to whether Rule 120 authorizes penalties and fines, and our interpretation of Rule 120 is therefore dispositive of the issue before us. Wike's debt for costs assessed under Rule 120 was not exempt from discharge under § 523(a)(7).

The Nevada State Bar resists this conclusion, but its position runs headlong into our precedent. Citing *In re Zarzynski*, 771 F.2d 304 (7th Cir. 1985), the State Bar argues that because a government's expenditure for "a disciplinary investigation and prosecution is not an actual pecuniary loss," compensation for such proceedings does not qualify as "compensation for actual pecuniary loss" under

§ 523(a)(7).  In particular, the State Bar quotes *Zarzynski* for
the categorical rule that, under § 523(a)(7), "[t]here is no
[government] pecuniary loss when the [government]
functions as it should in the furtherance of its public
responsibilities."  *See* 771 F.2d at 306 (alterations from State
Bar's opening brief).

Critically, however, *Zarzynski* specifically concerned
*criminal* restitution for the costs of the convicted defendant's
criminal proceeding, *see Zarzynski*, 771 F.2d at 305, and we
have squarely rejected, as inapplicable in cases involving
attorney disciplinary payments, the categorical rule from
cases construing § 523(a)(7) in the context of criminal
restitution.  As we explained in *Taggart*:

> We acknowledge that the few reported cases
> that consider whether the costs of attorney
> disciplinary proceedings are excepted from
> discharge under § 523(a)(7) have held that
> such costs are nondischargeable.  Those
> cases—all concerning attorney disciplinary
> systems in jurisdictions other than
> California—have, by and large, analogized
> the costs of attorney disciplinary proceedings
> imposed on disciplined attorneys to the costs
> of criminal litigation imposed on convicted
> defendants.  However, where, as here, the
> structure of the statutes imposing fees on
> disciplined attorneys, the existence of
> mandatory fees in the civil context, and the
> legislative history of the statute imposing
> monetary sanctions on disciplined attorneys
> all indicate that California does not view the
> assessment of costs on disciplined attorneys

as penal in nature, *analogy to the criminal context is inapt*.

249 F.3d at 993–94 (emphasis added) (simplified); *see Findley*, 593 F.3d at 1052 (reiterating that, in *Taggart*, "[w]e distinguished . . . opposing precedents" that, "'by and large, analogized the costs of attorney disciplinary proceedings to the costs of criminal litigation imposed on convicted defendants,'" and that we "conclud[ed] that 'analogy to the criminal context is inapt'" in the attorney discipline context (quoting *Taggart*, 249 F.3d at 994)).[5]  We have since echoed *Taggart*'s admonition by cautioning parties against relying on cases "animated by the unique concerns of state criminal proceedings."  *See Scheer*, 819 F.3d at 1211 (simplified); *see also Albert-Sheridan*, 960 F.3d at 1195 (explaining that § 523(a)(7) cases in the criminal context are unique because of the "long history of judicial exceptions for criminal restitution payments in discharge statutes and [judicial] concern for disturbing state criminal proceedings" (simplified)).

The State Bar's position is thus foreclosed by our circuit precedent.  Indeed, the Bar conceded at oral argument that if *Zarzynski*'s categorical rule unique to criminal restitution cases had controlled in *Taggart* or *Kassas*, then we would have reached the opposite outcome in those cases.  Applying

---

[5] That *Taggart* forecloses the State Bar's reliance on criminal restitution cases is  underscored by the fact that, in *Taggart*, the California State Bar, like the Nevada State Bar in this case, argued (specifically citing *Zarzynski*) that the costs of an attorney disciplinary proceeding must be dischargeable because the "protection of the public from conduct prohibited by law-disciplinary proceedings are sufficiently akin or analogous to criminal prosecutions."  State Bar Appellee's Brief at 10, *State Bar of Cal. v. Taggart* (*In re Taggart*), 249 F.3d 987 (9th Cir. 2001) (No. 99-56343), 1999 WL 33622393, at *10.

our precedent in the face of the Nevada attorney discipline scheme, we conclude that the fees and costs assessed against Wike under Rule 120 are not exempt from discharge.

## III.    Remand

Because this appeal arises from Wike's motion for sanctions against the State Bar under 11 U.S.C. § 525(a), the remaining question is whether, as the BAP held, we should remand this matter to the bankruptcy court to resolve any remaining issues concerning the motion.  We see no reason to do so.

Section 525(a) provides in relevant part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license . . . to . . . a person that is or has been a debtor under this title . . . *solely* because such . . . debtor . . . has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act." 11 U.S.C. § 525(a) (emphasis added).  The BAP held that remand was appropriate for the bankruptcy court to determine "[i]f there are other reasons preventing [Wike] from full reinstatement—such as failure to comply with the [Nevada Supreme Court's] mentorship and accounting requirements."   But on appeal, the Nevada State Bar "stipulate[d] to the fact [that Wike] has completed all conditions of reinstatement except for payment of his disciplinary fees" and that "[t]he only condition outstanding for [Wike] is payment of the disciplinary costs."  Given this stipulation, there is no need for the bankruptcy court to consider any other arguments under § 525(a).  We remand with instructions for the bankruptcy court to grant Wike's motion for sanctions against the State Bar of Nevada.

**AFFIRMED     AND     REMANDED     WITH INSTRUCTIONS.**